Lenore L. Albert, Esq.   SBN 210876
LAW OFFICES OF LENORE ALBERT
7755 Center Avenue, Suite #1100
Huntington Beach, CA 92647
Telephone (714) 372-2264
Facsimile (419) 831-3376
Email: lenorealbert@msn.com
Attorney for Plaintiffs, LORENSO PASILLAS, and AMELIA PASILLAS,

## UNITED STATES DISTRICT COURT
## NORTHER DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORENSO PASILLAS; AMELIA PASILLAS, | CASE NO.  cv12-04123-LHK |
| Plaintiffs, | |
| vs. | **FIRST AMENDED COMPLAINT** |
| DEUTSCHE BANK NATIONAL TRUST COMPANY; OCWEN LOAN SERVICING, LLC; AZTEC FORECLOSURE CORPORATION; ROBBIE "ROBERTA" L. WEAVER; ELAINE MALONE; TIANNA ALVARADO; DENISE A. MARVEL; LETICIA N. ARIAS; REMINGTON DUQUE; and DOES 1 through 25, inclusive, | **[Jury demand for Legal Claims]** |
| Defendants. | |

PLAINTIFF, LORENSO PASILLAS, AND AMELIA PASILLAS, plead as follows:

### I.      VENUE

1.      The Court has subject matter jurisdiction over this action under 28 USC §1331 based on a federal question and all other claims are based on supplemental jurisdiction.

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al          CASE NO. cv12-04123*

2.    The Court has personal jurisdiction over the defendants in this action by the fact that the Defendants are conducting business in the state of California.

3.    Venue is proper in this Court pursuant to 28 USC § 1392 because the action involves real property located in the Central District of California; and pursuant to 28 USC § 1391(b) because a substantial part of the events or omissions on which the claims are based occurred in this District.

## II. **PARTIES**

4.    At all times mentioned herein, Plaintiff LORENSO PASILLAS, AND AMELIA PASILLAS was the title owner by way of a grant deed to the property duly recorded in the San Benito County Recorder's Office, APN No. 015-050-001-000 more commonly known as 7268 and7278 Lovers Lane, Hollister, California 95023 (hereinafter referred to as "The Premises") which was their principal residence.

5.    Defendant, DEUTSCHE BANK NATIONAL TRUST COMPANY, as trustee under pooling and servicing agreement dated as of May 1, 2002 of the GSAMP Trust 2003-HE1 (Deutsche Bank), has its principal place of business in Santa Ana, California and is registered to do business in the State of California and claimed to be the title owner of The Premises, by virtue of a trustee's deed upon sale.

6.    Defendant, OCWEN LOAN SERVICING, LLC (Ocwen) has its principal place of business in Florida and regularly conducts business in the State of California.

7.    Defendant, Aztec Foreclosure Corporation (Aztec), has its principal place of business n and regularly conducts business in the State of California.

8.    Defendant, Robbie "Roberta" L. Weaver is a Notary Public, Commission Number 111096 State of Arizona, Maricopa County, for Perry and Shapiro LLP and notarized a document that was recorded in the county recorder's office in order to initiate or conclude the nonjudicial foreclosure that took place in this case. Defendant Weaver is

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. cv12-04123*

a robo-signer and signs as Assistant Secretary and Vice President as Attorney-in-Fact for Defendant Ocwen and Defendant Deutsche Bank.

9.     Defendant, Elaine Malone is a Notary Public, Commission Number 29268 State of Arizona, Maricopa County, for Perry and Shapiro LLP and notarized a document that was recorded in the county recorder's office in order to initiate or conclude the nonjudicial foreclosure that took place in this case. Defendant Weave is a robo-signer and signs as Assistant Secretary and Vice President as Foreclosure Supervisor for Defendant Aztec, although working at the same law firm in Arizona.

10.    Defendant, Tianna Alvarado is a Notary Public, Commission Number 292514 State of Arizona, Maricopa County, for Perry and Shapiro LLP and notarized a document that was recorded in the county recorder's office in order to initiate or conclude the nonjudicial foreclosure that took place in this case. Defendant Alvarado is a robo-signer and her true title and capacity are unknown to Plaintiff.

11.    Defendant, Leticia N. Arias is a Notary Public, Commission Number 1212282 State of Florida, purporting to be for New Century Mortgage Corporation (NCMC) and notarized a document that was recorded in the county recorder's office in order to initiate or conclude the nonjudicial foreclosure that took place in this case. Defendant Arias is a robo-signer and signs as Attorney-in-Fact for Defendant Ocwen purporting to be on behalf of NCMC.

12.    Defendant, Denise A. Marvel, Manager of Document Control and Contract Management of Ocwen and alleged Attorney-in-Fact for bankruptcy NCMC located at Ocwen in Florida and executed a document that was recorded in the county recorder's office in order to initiate or conclude the nonjudicial foreclosure that took place in this case. Defendant Marvel is a robo-signer in this case.

13.     Defendant Remington Duque, is the manager and owner of Sunrise Bay Mortgage, and acts as the agent and representative of Defendant Ocwen, whose office is located at 538 Main Street, Watsonville, California.

14.     Plaintiffs do not know the true names and capacities of the defendants DOES 1 through 25, inclusive, and, as such, names said defendants by such fictitious names. Plaintiffs will amend the complaint to state the true name and capacity of the DOE defendant(s) when such information is ascertained.

15.     Plaintiffs are informed and believe, and allege thereon, that each defendant is responsible in some manner for the occurrences alleged in their complaint, and that plaintiffs' damages were proximately caused by the defendants at all times mentioned in the complaint.

16.     Plaintiff is further informed and believes and alleges thereon that each defendant was the agent, servant, representative, and/or employee of their co-defendants, and in doing the things hereinafter alleged were acting in the scope of their authority as agents, servants, representatives, and/or employees, and with the permission and consent of their co-defendants.

17.     Additionally, plaintiff is informed and believes and alleges thereon that each defendant assisted, aided and abetted, adopted, ratified, approved, or condoned the actions of every other defendant and that each corporate defendant, if any, was acting as the alter ego of the other in the acts alleged herein.

18.     Any applicable statutes of limitations have been tolled by the Defendants continuing, knowing, and active concealment of the facts alleged herein. Despite exercising reasonable diligence, Plaintiffs could not have discovered, did not discover, and were prevented from discovering, the wrongdoing complained of herein.

### III. FACTUAL ALLEGATIONS

4

**FIRST AMENDED COMPLAINT**

19.     Mr. and Mrs. Pasillas bought a farm (the "premises") in 2003 for approximately $1,000,000.00.

20.     They and their extended family have made this farm their home.

21.     It currently houses about 60 cattle, 10 bulls, 30 horses, and a few dogs.

22.     In 2003, Mr. & Mrs. Pasillas paid $416,000.00 in earnest money toward the purchase of their home and borrowed the remaining $600,000.00 from New Century Mortgage.

23.     The farm consists of two separate homes with two separate addresses: 7268 Lovers Lane and 7278 Lovers Lane respectively.

24.     These two separate addresses for the two separate homes were known to the defendants when the deed of trust securing the loan was drafted.

25.     The defendants secured the loan for $600,000.00from New Century Mortgage Corporation by a Note dated November 21, 2002 with a deed of trust only attaching to 7278 Lovers Lane, Hollister, California.

26.     The plaintiffs' monthly mortgage payment was fixed at $3,981.59 for thirty years based on a 6.750% interest rate starting January 1, 2003 with a beginning balance of $597,916.13.

27.     From January 1, 2003 through April 1, 2008, Plaintiffs paid Defendant $3,981.59 each month, and on time for their obligation.

**First Cause of Action**

**To Set Aside the Foreclosure Sale Based on Defendant's Breach of the Deed of Trust**

28.     Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 27 of this Complaint as though set forth in full herein.

29.     On March 13, 2009 Vicki Steen, employed by LPS Default Title and Closing acting as agent for Defendant Aztec Foreclosure Corporation who in turn was

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. cv12-04123*

acting as Agent for the Beneficiary under said Deed of Trust, executed a Notice of Default against the Property purporting Plaintiffs owed Defendant Deutsche Bank "$18,162.16 as of March 27, 2009."

30.    The Notice of Default declared that the default was a result of a "nonpayment" that "became due [on] 12/01/08."

31.    This Notice of Default was recorded in San Benito's County Recorder's Office on March 30, 2009 and defendants used this document to fraudulently initiate a foreclosure upon the Plaintiff's Property.

32.    The truth is Defendant Ocwen endorsed, accepted and cashed the following payments from the Plaintiffs on this Property in 2008 as follows:

| Date Posted by Bank showing the Check Cleared the Account | Amount the Plaintiffs Paid on their Loan |
| --- | --- |
| 12/29/2008 | $        4,200.00 |
| 12/22/2008 | $        4,200.00 |
| 11/24/2008 | $        4,631.37 |
| 12/4/2008 | $        (4,631.37) |
| 12/4/2008 | $        4,631.37 |
| 10/15/2008 | $        3,891.59 |
| 9/22/2008 | $        4,086.17 |
| 8/28/2008 | $        4,086.17 |
| 9/9/2008 | $        (4,086.17) |
| 9/9/2008 | $        4,631.37 |
| 7/28/2008 | $        3,329.00 |
| 7/28/2008 | $        1,496.95 |
| no endorsement found | $        3,523.58 |
| 7/18/2008 | $        3,523.58 |
| 6/13/2008 | $        4,280.75 |
| 5/19/2008 | $        4,280.75 |
| 4/24/2008 | $        3,891.59 |
| 3/17/2008 | $        3,891.59 |
| 2/18/2008 | $        3,891.59 |

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*        *CASE NO. cv12-04123*

| 1/16/2008 | $ | 3,891.59 |

33.     Based on the foregoing, Plaintiffs allege they were not in default as of December 1, 2008 as represented in the Notice of Default recorded on March 30, 2009 in the County Recorder's Office.

34.     Plaintiffs are informed and believe and allege thereon that Defendant had no right to initiate a nonjudicial foreclosure through the Power of Sale clause contained in the Deed of Trust on the grounds it was Defendant Ocwen's own shoddy accounting practices that led to the appearance of a default on the Deed of Trust.

35.     In fact, Plaintiffs estimate they had paid approximately $700,000.00 in total toward the purchase of this farm by the time the Notice of Default was recorded.

36.     Defendants breached the express terms of the deed of trust by recording a notice of default prior to an actual default under the Deed of Trust making the sale based on the Notice of Default void.

37.     Plaintiffs have already tendered all of their payments as obligated prior to defendant's breach as alleged above.

38.     As a result of Defendant's breach, Plaintiffs seek equitable relief from the Court to set aside the sale of the Property which was taken as a credit bid by Defendant Deutsche Bank.

39.     Plaintiffs also pray for actual damages, attorneys and costs.

**Second Cause of Action**

**To Set Aside the Foreclosure Sale Based on Defendant's Breach of the Deed of Trust**

40.     Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 39 of this Complaint as though set forth in full herein.

**7**

**FIRST AMENDED COMPLAINT**

41.     It is implied that the conduct of the parties in a long term contract, such as the subject Deed of Trust, will be done in good faith and with fair dealing, even with clauses that state that one party is given discretion.

42.     Prior to the trustee's sale, Defendant Deutsche Bank was made a party to the deed of trust by way of an assignment.  On May 1, 2009 Denise A. Marvel, Manager of Document Control and Contract Management for Ocwen Loan Servicing, LLC executed an Assignment of Deed of Trust for New Century Mortgage Corporation as its Attorney-in-Fact representing that on May 30, 2003 Plaintiff's Deed of Trust and Note was assigned to Deutsche Bank from New Century Mortgage Corporation.

43.     The covenants in the Deed of Trust allowing Deutsche Bank to foreclose through a Power of Sale clause implied that defendant would first, in good faith, verify that it or its agent, Ocwen Loan Servicing, LLC accurately accounted for all payments made and accurately and timely made the appropriate adjustments to the Plaintiff's account before recording a Notice of Default and initiating a nonjudicial foreclosure by electing to invoke the Power of Sale clause in the Deed of Trust.

44.     Defendant Deutsche Bank breached the implied covenant of good faith and fair dealing by failing to verify that they accurately accounted for all payments made and accurately and timely made the appropriate adjustments to the Plaintiff's account before recording a Notice of Default and initiating a nonjudicial foreclosure by electing to invoke the Power of Sale clause in the Deed of Trust.

45.     As a result of this breach of the covenant of good faith and fair dealing Plaintiffs have been damaged in an amount to be proven at trial.

46.     Plaintiffs are also entitled to costs and attorney fees.

**Third Cause of Action**

**Abuse of the Nonjudicial Foreclosure Process**

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. cv12-04123*

47.     Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 46 of this Complaint as though set forth in full herein.

48.     California recognizes the tort of Abuse of Process.

49.     California law requires foreclosures to proceed through a judicial process.

50.     California law also recognizes that parties to a Deed of Trust may agree to use a nonjudicial foreclosure process as particularly prescribed under California law if a Power of Sale clause is contained in the Deed of Trust.

51.     Defendant wrongfully initiated the nonjudicial foreclosure process by failing to comply with Cal Civ Code §2923.5.

52.     Defendant intentionally used the nonjudicial foreclosure process to sidestep compliance with Cal Civ Code §2923.5 by improperly creating and executing declaration forms stating there was compliance under 2923.5 without having any personal knowledge whether such compliance actually occurred for the improper purpose of foreclosing without first complying with California state foreclosure laws.

53.     On March 17, 2009 a declaration purporting to comply with Cal Civ Code §2923.5 was signed by Kevin M. Jackson, Manager of "Beneficiary/Authorized Signature" and attached to the Notice of Default that was recorded in San Benito on .

54.     Plaintiffs had never been contacted by Kevin M. Jackson, Manager of "Beneficiary/Authorized Signature" to initiate or explore alternatives to foreclosure at any time prior to the execution and recording of the Notice of Default.

55.     Plaintiffs were not given any contact information, such as a phone number or address so that they could contact Kevin M. Jackson to initiate or explore alternatives to foreclosure or to find out why he signed a declaration under penalty of perjury attesting that he had provided "a prominent link on the homepage of Beneficiary's Internet Web site (if Beneficiary has a Web site) to the following information: [this space left blank] …Options that may be available…advising them of steps to take as to explore

9

**FIRST AMENDED COMPLAINT**

those options: [this space left blank].. a toll-free telephone number for borrowers who wish to discuss option for avoiding foreclosure with Beneficiary; [the space on the first page to insert the phone number was left blank.].

56. The document never provided the information that it stated it was providing; it was merely left blank.

57. Defendant used the nonjudicial foreclosure procedure in a manner that it was not originally designed to achieve.

58. Nevertheless, the document was allowed to be recorded in the County Recorder's office and was used to initiate a nonjudicial foreclosure on the Property.

59. As a proximate result of defendant's conduct, plaintiffs were faced with losing their Property and had been emotionally and financially injured in an amount to be proven at trial.

60. Defendant's conduct was a substantial factor in causing plaintiffs harm in an amount to be proven at trial.

61. The aforementioned conduct of defendant(s) was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant(s) with the intention on the part of the defendant(s), by a corporate officer, manager or control agent of Ocwen, (Kevin M. Jackson) thereby depriving plaintiff of property or legal rights or otherwise causing injury, and was malicious, wanton, reckless or despicable conduct that subjected plaintiff to a cruel and unjust hardship in conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages.

62. Alternatively, Plaintiff is informed and alleges thereon that Defendants, Deutsche Bank and Ocwen, have engaged in a pattern of deception to evade the obligations of California's laws, and as such an award of exemplary and punitive damages are justified.

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. cv12-04123*

**Fourth Cause of Action**

**Breach of Agreement**

63.     Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 62 of this Complaint as though set forth in full herein.

64.     On or about February 2009, Plaintiffs fell behind in their payments and went back to Remington Duque, the manager and owner of Sunrise Bay Mortgage, that assisted them in financing the first loan seeking loan modification assistance.

65.     Duque was acting as Ocwen's authorized agent.

66.     Plaintiffs filled out a Making Home Affordable loan modification application and submitted all documents required in the initial package.

67.     Plaintiffs passed the NPV test and were NPV positive.

68.     Plaintiffs were informed they qualified and were eligible for a HAMP modification.

69.     On March 11, 2009 Plaintiffs received an email correspondence from Duque advising the Plaintiffs to not make any payments on the loan during the loan modification process.

70.     Plaintiffs did as instructed and refrained from making any payments on their loan.

71.     On July 20, 2009 a Notice of Trustee's Sale was recorded which represented that 7278 Lovers Lane would be sold at auction on August 17, 2009 at 11:30AM.

72.     Plaintiffs contacted Ocwen upon learning of the sale, through Duque, to inquire if the sale would be postponed due to the fact that they had not received a decision on their loan modification yet.

73.     Defendant Ocwen, through Duque, promised Plaintiffs that it would not foreclose on Mr. and Mrs. Pasillas' home while their broker and Ocwen were working out a loan modification.

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al        CASE NO. cv12-04123*

74.     The property did not sell on August 17, 2009.

75.     Ocwen represented that as the servicer, it had control over whether the Property would be sold at auction or if the sale would be postponed.

76.     On September 4, 2009 Plaintiffs received another email correspondence from Duque requesting more documentation and informing Plaintiffs that the lender had "postponed the foreclosure" sale.

77.     The September 4, 2009 correspondence also stated that Duque was "confident and optimistic" that Plaintiffs' loan modification would be approved.

78.     Plaintiff provided the requested documentation as requested.

79.     Ocwen continued to reset the sale date from time to time on the promise that they would not sell the Property while they were still working on the loan modification.

80.     Yet, while the defendants were still processing the loan modification application, on or about October 30, 2009 defendant Aztec Foreclosure Corporation placed the Property on the auction block and then transferred it to Deutsche Bank by a credit bid at a foreclosure auction that Mr. and Mrs. Pasillas were never informed would occur.

81.     Mr. and Mrs. Pasillas were informed of the foreclosure auction after it had already occurred by Duque and lost the opportunity to avoid it from occurring.

82.     As a result of defendant's breach of this agreement, Plaintiffs lost the opportunity to stop the sale of their home and lost legal title to their Property and have incurred actual damages from that point forward in trying to save their home, in an amount to be proven at trial.

83.     The breach and damages are continuing.

**Fifth Cause of Action**

**Negligent Misrepresentation**

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. cv12-04123*

84.    Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 83 of this Complaint as though set forth in full herein.

85.    On September 4, 2009 Plaintiffs received email correspondence from Duque informing Plaintiffs that the lender had "postponed the foreclosure" sale.

86.    The September 4, 2009 correspondence also stated that Duque was "confident and optimistic" that Plaintiffs' loan modification would be approved.

87.    Duque was acting as defendant Ocwen's authorized agent or representative when the statement was made.

88.    Alternatively, Ocwen originally made the statement to Duque with reason to believe that Duque would then relay that statement to the Plaintiffs.

89.    The statement was not true.

90.    Ocwen had no reasonable grounds for believing the representations were true when Ocwen made them or Ocwen made the promises, secretly knowing it had no intention of performing when the promise was made.

91.    Ocwen knew or had reason to know that the statement about the postponement of the foreclosure sale would influence Plaintiffs' conduct and intended that Plaintiffs rely on this representation.

92.    Plaintiffs reasonably relied on Ocwen's representation in that they sent the additional documentation as requested and waited without seeking alternative methods to redress the default and postpone the sale under the belief that Ocwen had postponed the sale until Ocwen had processed the modification application.

93.    Plaintiff's failure to act was reasonable on the grounds they were assured that Duque was "confident and optimistic" that a loan modification would be forthcoming.

94.    Mr. and Mrs. Pasillas are gainfully employed and have enough income to make affordable monthly mortgage payments on their home.

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. cv12-04123*

95.     But defendants went forward with the foreclosure sale on October 30, 2009 before Plaintiffs received a determination on their loan modification.

96.     As a result of that reliance, Plaintiffs were harmed; and Plaintiffs' reliance on Ocwen's representation was a substantial factor in causing Plaintiffs' harm in that Defendant failed to postpone the foreclosure during the modification process.

97.     Plaintiffs suffered great emotional distress after learning Ocwen had not actually postponed the foreclosure sale.

98.     Plaintiffs also lost the opportunity to avoid the foreclosure sale through alternative means.

99.     As a proximate result of defendant's conduct, plaintiff is faced with losing property and has been emotionally and financially injured in an amount to be proven at trial.

100.    The aforementioned conduct of defendant(s) was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant(s) with the intention on the part of the defendant(s), by a corporate officer, manager or control agent of Ocwen,  thereby depriving plaintiff of property or legal rights or otherwise causing injury, and was malicious, wanton, reckless or despicable conduct that subjected plaintiff to a cruel and unjust hardship in conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages.

Sixth Cause of Action

Wrongful Foreclosure

101.    Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 100 of this Complaint as though set forth in full herein.

102.    As particularly described above, Defendants wrongfully foreclosed on the Property without any legal right to do so.

14

**FIRST AMENDED COMPLAINT**

103.     As a result of Defendants' wrongful conduct, the trustee's deed upon sale is void entitling Plaintiffs to have the trustee's deed upon sale set aside.

### Seventh Cause of Action

### Negligence

104.     Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 103 of this Complaint as though set forth in full herein.

105.     Defendant Ocwen owed plaintiffs a duty of reasonable care in handling the loan in such a way to prevent foreclosure and forfeiture of Plaintiffs' Property because the transaction was intended to affect the Plaintiff, the harm to Plaintiffs was certainly foreseeable, there was a substantial degree of certainty that the Plaintiffs would suffer injury by forfeiting their home.

106.     Defendants conduct was closely connected to the wrongful initiation and conclusion of a nonjudicial foreclosure on Plaintiffs' home.

107.     Defendants conduct was closely related to the injury suffered by Mr. and Mrs. Pasillas.

108.     Defendants conduct was contrary to the state and national policy of sustaining homeownership, savings and retirement and was contrary to preventing said future harm to the Plaintiffs

109.     As a consequence, Defendants owed Plaintiffs a general duty of care when foreclosing.

110.     Defendants breached their duty of care by failing to (1) accurately verify a purported default on the loan and verify the payments to the underlying obligation were applied promptly and accurately; (2) to ensure a default was not recorded until compliance with 2923.5 had been conducted; (3) postpone the foreclosure sale while a loan modification application was being processed that would avoid foreclosure; and (4)

### FIRST AMENDED COMPLAINT

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. cv12-04123*

promptly process the loan modification application which was started in or about February 2009.

111. As a result of defendant's negligence, Plaintiffs lost their home through foreclosure sale causing them emotional distress.

112. Plaintiffs suffered from worry, anxiety, fear, humiliation, shame, inability to concentrate, depression, insomnia, nausea, headaches and stomach ailments.

113. Plaintiffs are seeking special and general damages in an amount to be proven at trial.

## Eighth Cause of Action

## Slander of Title

114. Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 113 of this Complaint as though set forth in full herein.

115. As a result of the September 9, 2009 email stating that Debuque was confident that the investors would approve a loan modification, then the resulting sale, Plaintiffs sent Ocwen a Qualified Written Request.

116. Defendant Ocwen responded to the QWR by way of a letter dated August 13, 2012.

117. The August 13, 2012 letter did not disclose the creditor or investor of the loan.

118. The August 13, 2012 letter did not disclose the payment history, noting only that it would be sent later.

119. The letter further affirmed that the Property was sold at foreclosure on October 30, 2009.

120. The August 13, 2012 letter did not contain a copy of the note, noting only that it would be sent later.

**FIRST AMENDED COMPLAINT**

121.    The Plaintiffs then received a letter from Ocwen dated August 14, 2012 representing that the loan documents were enclosed as a follow up response to the QWR.

122.    Attached to the letter was a three page Note made between Plaintiffs and New Century Mortgage Corporation.

123.    The Note, as it existed on August 14, 2012 in Ocwen's possession or control, after the foreclosure sale, did not contain any endorsements from New Century Mortgage Corporation.

124.    Based upon this Note, the back-dated Assignments recorded in the County Recorder's office, and the terms of the Mortgage Backed Securitized GSAMP Trust 2004-HE1, plaintiff is informed that Defendants were not entitled to foreclose and have slandered Plaintiffs' title to the property as a result.

125.    Plaintiff is informed and believes and alleges thereon that Defendant's representation that the Plaintiff's Loan belonged to the mortgage backed securitized trust captioned the "GSAMP TRUST 2004-HE1" ("MBS trust") was not true.

126.    Under the terms of the MBS trust, loans get transferred and assigned as follows:

127.    New Century Mortgage Corporation, the Lender on the deed of trust must transfer the loan to GS Mortgage Securities Corp., who is listed as the "Depositor" of the MBS trust.

128.    Then GS Mortgage Securities Corp. deposits the loan into the trust by executing an assignment of the deed of trust to Defendant, DBNTC, who is listed as the "Trustee" of the MBS Trust.

129.    Defendant, Ocwen Loan Servicing, LLC f/k/a Ocwen Bank, FSB was the designated servicer on this loan.

130.    By executing the trustee's deed upon sale by credit bid in the name of Deutsche Bank which was recorded in the County Recorder's office, Defendants

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al        CASE NO. cv12-04123*

Deutsche Bank and Ocwen have represented that all assignments and transfers as required by the Pooling and Servicing Agreement dated May 1, 2003 in this MBS Trust were timely executed and followed.

131.     However, no assignment to the MBS trust was recorded in the County Recorder's office until May 8, 2009 wherein an Assignment of Deed of Trust was recorded in San Benito County Recorder's office purporting New Century Mortgage Corporation had assigned the deed of trust and note obligating the Plaintiffs to Deutsche Bank National Trust Company, as Trustee for the registered holders of GSAMP Trust 2003-HE1, Mortgage Pass Through Certificates, Series 2003-HE1 on "the 30th date of May 2003."

132.     Under California law, a recorded assignment alone, cannot assign the Note.

133.     The Note must be endorsed as required under California Commercial Code dealing with Negotiable instruments.

134.     Here, the Note was not endorsed by New Century Mortgage Corporation before the Property was taken by a purported credit bid on October 30, 2009.

135.     Instead of foreclosing on a Note that was properly endorsed to the foreclosing beneficiary, the defendants foreclosed based on an assignment of deed of trust it recorded in the San Benito County Recorder's Office.

136.     Defendant Ocwen purported it was executing the Assignment by Denise A. Marvel, Manager of Document Control and Contract Management, New Century Mortgage Corporation by its Attorney in Fact, Ocwen Loan Servicing, LLC on May 1, 2009.

137.     The instrument was used in the nonjudicial foreclosure of the Property to appoint defendant Aztec Foreclosure Corporation as the substitute trustee; to allow Ocwen to act under a Power of Attorney that was not yet in existence during the time

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al          CASE NO. cv12-04123*

period that it was required to act on behalf of the original beneficiary; and to allow Deutsche Bank to transfer the property to itself with a no-money credit bid.

138.     The instrument contained fabricated statements in that Ocwen Loan Servicing, LLC did not have a power of attorney on May 30th, 2003 to act as New Century Mortgage Corporation's Attorney-in-Fact on the Grounds the Power of Attorney was not recorded until October 11, 2007.

139.     Plaintiff believes that Defendants, and each them, were instrumental in the failure to immediately reconvey title to Plaintiff through either recording a rescission or Reconveyance of the deed to Deutsche Bank on the Property knowing the Note was never endorsed by New Century Mortgage Corporation, and as such, the deed to Deutsche Bank slandered Plaintiff's interest in the Property.

140.     Defendant Ocwen as Attorney-in-Fact for Deutsche Bank purportedly, but falsely, wrongfully and without privilege, held itself out as the holder of legal title to the Property and caused a sale of Plaintiff's Property, and in that capacity, caused a deed to Deutsche Bank to be recorded against the Plaintiff's Property.

141.     None of the Defendants, whether jointly or severally, are the holder of legal title, trustee, beneficiary or assignee of any beneficiary, of any Deed of Trust, mortgage or other lien recorded against the Plaintiff's Property.

142.     The claims of Defendants are without any right whatsoever, in that any and all such interests and rights are defective and as a matter of law are of no legal significance.

143.     Plaintiffs have been damaged by the slander of title in that Plaintiff's title to the Property was clouded and the marketability, salability and value of the Property was impaired.

144.     As a proximate result of Defendants' slander, Defendants have been able to obtain a writ of execution/possession to the entire farm and have been trying to obtain

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al         CASE NO. cv12-04123*

physical possession of the property and oust Plaintiffs and their family members off the farm.

145.     Due to the slander to the title, Plaintiffs have been unable to obtain other credit due to the cloud that this has put on the Property in order to properly fight this eviction.

146.     As a further proximate result of the Defendants' conduct, and each of them, Plaintiff was injured in his business and property in a number of ways to the continued loss of use of his equity, including but not limited to, the lost opportunity to obtain a home equity loan in order to improve the property; continued lost opportunity to list the Property as a rental; and the continued lost opportunity to refinance or sell the property.

147.     For a period of time, and continuing to the present Plaintiff has had to forego normal business activities from time to time to fend off Sheriffs that Defendant Aztec Foreclosure Corporation has ordered to the property to evict them, and have been from time to time required to stay at the property for fear if they left the Property unattended, that Defendants would take possession in their absence which would create even a further legal burden and expense to Plaintiff.

148.     As a further proximate result of Defendants' slander of title to the Property, Plaintiff has been required to bring this action to clear title to the Property.

149.     Plaintiff is entitled to recover all of his damages resulting from the slander of title including without limitation his attorneys' fees and costs incurred in bringing this action.

150.     Defendants' acts are malicious, oppressive, and fraudulent in that Plaintiffs have acted with the intent to harm Plaintiff's interest in the Property and are tantamount to an attempted theft of Plaintiff's interest in the Property.  Plaintiff is therefore entitled to punitive damages.

**Ninth Cause of Action**

20

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. cv12-04123*

**Constructive Trust**

151.     Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 150 of this Complaint as though set forth in full herein.

152.     Defendants, through their above-described conduct, wrongfully obtained the Property that should have been held in Plaintiff's name free and clear of all encumbrances of any sort.

153.     As a result of Defendants' conduct set forth above, Defendants hold the Property and any proceeds obtained thereon as constructive trustee for Plaintiff's benefit.

**Tenth Cause of Action**

**Declaratory Relief**

154.     Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 153 of this Complaint as though set forth in full herein.

155.     An actual controversy has arisen between Plaintiff and Defendants, Ocwen, Deutsche Bank and Aztec Foreclosure Corporation, concerning the title and immediate possession to the Property.

156.     Plaintiff seeks a determination from the Court that, due to Defendants' above-described conduct, the title and immediate possession to the Property belongs to Plaintiff.

**Eleventh Cause of Action**

**Violation of Business & Professions Code §17200**

157.     Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 156 of this Complaint as though set forth in full herein.

158.     Business & Professions Code §17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al          CASE NO. cv12-04123*

Division 7 of the Business & Professions Code" and reaches past and one-time acts. *Id.* *See also*, *Stop Youth Addiction, Inc. v Lucky Stores, Inc.*, 17 Cal4th 553, 570 (1998).

159.     Beginning at an exact date unknown to plaintiff but at least since February 2009, Ocwen and Deutsche Bank have committed acts of unfair competition, as defined by Business & Professions Code §17200, by engaging in the following practices:

   a. Deutsche Bank and Ocwen's policy/practice of foreclosing on loans when the note has not been endorsed to them by the Lender violates California negotiable instruments law and foreclosure statutes, and consequently, constitutes an unlawful business act or practice *within* the meaning of Business & Professions Code §17200.

160.     Beginning at an exact date unknown to plaintiff but at least since February 2009 Ocwen has committed acts of unfair competition, as defined by Business & Professions Code §17200, by engaging in the following practices:

   a. By communications forwarded to plaintiffs and as detailed above in the Debuque letters, Ocwen represented to plaintiffs that they were eligible for a loan modification and that pending review they would not foreclose and any set foreclosure sale would be postponed until the modification application was completed by Ocwen. The advertisements and communications implied that Ocwen intended to comply with all federally mandated requirements consistent with HAMP Guidelines and Servicer Participation Agreements in order to obtain TARP funds, of which Defendant Ocwen received $1,143,252,740.00 on July 24, 2009.

   b. In response to the advertisements and communications received from defendants, Plaintiffs complied with all requests by Ocwen to provide documentation for a loan modification on multiple occasions between

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. cv12-04123*

February and October 2009 and did not seek any alternative methods to ensure a sale would not proceed.

    c. That Ocwen then sold Plaintiff's property at auction without warning before completing the loan modification application that Plaintiffs submitted.

    d. Ocwen never warned or cautioned Plaintiffs that its representations in Debuque's correspondence were not verified, may not be true and may not comply with federal program guidelines.

161.    The harm to plaintiff and to members of the general public outweighs the utility of defendant's policy/practice, and consequently, Ocwen's practice of issuing such letters/advertisements without full disclosure or warnings as described above constitutes an unfair business act or practice within the meaning of Business & Professions Code §17200.

162.    Defendant Aztec Foreclosure Corporation and Ocwen's policy/practice of causing notices of default to be recorded representing there was a default based on nonpayment without actually performing any due diligence to determine the veracity of those statements is likely to mislead the general public, and consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code §17200.

163.    Defendant Ocwen's policy/practice of causing declarations of compliance with 2923.5 attached to notices of default to be recorded representing there was a compliance with the statute without actually performing any due diligence to determine the veracity of those statements or even ensuring that the form is completely filled out is likely to mislead the general public, and consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code §17200.

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*    *CASE NO. cv12-04123*

164.    Defendants Robbie Weaver, Elaine Malone, Tianna Alvarado, Denise Marvel, Leticia Arias' policy/practice of executing and notarizing foreclosure documents such as the notice of default, assignment of deed of trust, substitution of trustee, notice of sale and resulting trustee's deed upon sale without actually performing any due diligence to determine the veracity of the statements contained in the document or ensuring that the person was present and executing the document when so notarizing it is likely to mislead the general public, and consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code §17200.

    a.  Ocwen, Aztec Foreclosure and Deutsche Bank's policy/practice as alleged above, commonly known as fraudulent foreclosure through the use of robo-signers or surrogate signers by (1) notarization of a signature of a person not in the presence of the notary public; (2) offering false instruments for filing or recording; and (3) signing without verifying the information or having any personal knowledge of the facts contained in the instruments being recorded and used to initiate foreclosure as occurred in this case is likely to mislead the general public, and consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code §17200.

    b.  Defendants Doe 2 through 10 knew and were aware of defendants' unlawful, unfair or deceptive business practices alleged above by virtue of directing the foreclosures, attempting to conclude the foreclosures or attempting to become the beneficiary of the foreclosures on the Plaintiff's property.

    c.  Defendants Doe 2 through 10 aided and abetted/induced these violations by defendants in that they commanded or attempted to conduct the foreclosure on this property during this time period.

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*        *CASE NO. cv12-04123*

165.     The unlawful, unfair, and fraudulent business practices and false and misleading advertising of Ocwen, as described above, present a continuing threat to members of the public in that it gives a false reassurance to a reasonable person in foreclosure that Ocwen is in contact with the true creditor of the loan when the bank is processing a loan modification application or otherwise assisting the borrower in preventing foreclosure, when in fact Ocwen knows or has reason to know it has no knowledge of who the creditor really is at any given point in time.

166.     As a result of the aforementioned acts, plaintiffs have lost money or property and suffered injury in fact, such as hiring professionals to assist them in trying to maintain possession of their home and losing title to the Property.

167.     Finally, stopping this practice furthers the public interest. The Plaintiffs are therefore entitled to reasonable attorney's fees under section 1021.5 of the California Code of Civil Procedure.

Wherefore plaintiff demands judgment against defendants as set forth below.

## Twelfth Cause of Action

## Violation of RESPA

168.     Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 167 of this Complaint as though set forth in full herein.

169.     The Plaintiffs sent Defendant Ocwen a "qualified written request" as that term is defined under RESPA, 12 U.S.C. § 2605(e)(1)(B), regarding the crediting of payments on her mortgage account.  In the qualified written request, the Plaintiff specified their reasons for belief that the account was not in default and requested that Defendant Ocwen correct the error.  The Plaintiff also requested that Defendant Ocwen provide them with information and documentation supporting its claim that the Plaintiff's account was in default.

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. cv12-04123*

170.    Defendant violated RESPA, 12 U.S.C. § 2605(e)(1)(A), by failing to provide a written response acknowledging receipt of the Plaintiff's qualified written request no later than 20 days after receipt of the request. The first response by Ocwen was made in the letter dated August 12, 2013.

171.    Defendant violated RESPA, 12 U.S.C. § 2605(e)(2)(A), by failing to make appropriate corrections to the Plaintiff's account in response to the qualified written request, including the crediting of any late charges or penalties, and failing to transmit written notice of such corrections to the Plaintiff no later than 60 days after receipt of the Plaintiff's qualified written request.

172.    To date, plaintiffs have disputed the default and Defendants have failed to provide an adequate investigation into the matter although the checks were endorsed by Ocwen that were accepted and received in payment of this loan.

173.    Defendant violated RESPA, 12 U.S.C. § 2605(e)(2)(C) by failing to provide the Plaintiff with the information and documentation requested, or an explanation why the information sought was unavailable, no later than 60 days after receipt of the Plaintiff's qualified written request.

174.    Defendant violated RESPA, 12 U.S.C. § 2605(e)(2) by refusing to cease its collection efforts and foreclosure proceedings after receiving the Plaintiff's qualified written request.

175.    Upon information and belief, Defendant violated RESPA, 12 U.S.C. 2605(e)(3), by providing information to consumer reporting agencies regarding overdue payments allegedly owed by the Plaintiff that were related to her qualified written request.

176.    Defendant has engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605.

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*      *CASE NO. cv12-04123*

177.     As a result of defendant's violation, plaintiff is entitled to damages, attorney's fees and costs.

## VI. PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs pray for judgment** against defendants, and each of them, as follows:

**A.** Injunctive and declaratory relief consistent with the allegations in this complaint;

**B.** Set aside the trustee's deed upon sale and restore title and possession of the Property to Plaintiffs;

**C.** Pursuant to Business and Professions Code sections § 17203 and §17535, and pursuant to the equitable powers of this Court, plaintiff prays that the defendants be preliminarily and permanently enjoined from committing any acts of unfair competition in violation of § 17200, including, but not limited to, the violations alleged herein.

**D.** Pursuant to Business and Professions Code sections § 17203 and §17535, and pursuant to the equitable powers of this Court, plaintiff prays that the defendants are ordered to restore to the general public all funds or property acquired by means of any act or practice declared by this Court to be unlawful or fraudulent or to constitute unfair competition under Business & Professions Code §17200 et seq., or untrue or misleading advertising under §17500 et seq.

E. Restitution and disgorgement of profits

**F.** Actual, Special and General Damages as proven at trial;

**G.** Statutory damages and civil penalties;

**H.** Treble Damages for Antitrust violations;

**I.** Costs of this action, including the fees and costs of experts;

**J.** Attorneys' fees;

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. cv12-04123*

**K.** Exemplary and Punitive Damages; and

**L.** Such other and further relief as this Court finds necessary and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as to part that is not equitable in nature.

Dated: April 11, 2012                    LAW OFFICES OF LENORE ALBERT

By: s/Lenore L. Albert_____
LENORE L. ALBERT, ESQ.
Attorney for plaintiff, LORENSO PASILLAS,
and AMELIA PASILLAS

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al          CASE NO. cv12-04123*

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE:
 I declare that I am over the age of 18 years, and not a party to the within action; that I am employed in Orange County, California; my business address is 7755 Center Avenue Suite #1100,Huntington Beach, CA  92647.
On April 11, 2013, I served a copy of the following document(s) described as:

**FIRST AMENDED COMPLAINT**

On the interested parties in this action as follows:
For Defendant Western Progressive, LLC and
Defendant Deutsche Bank National Trust Company:
Eric D. Hauser, Esq.
Steven S. Son, Esq.
HOUSER & ALLISON
3760 Kilroy Airport Way, Suite 260
Long Beach, CA 90806
Telephone: (949) 679-1111
Fax: (949) 679-1112
Email: sson@houser-law.com
 **[x] BY CM/ECF** – I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth pursuant to FRCP 5(d)(1).
[ ] **BY EMAIL** – I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth herein.
[ ] **BY FAX** – I caused such document(s) to be transmitted facsimile from the offices located in Westminster, California this business day to the aforementioned recipients.
        I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: April 11, 2013

                                            s/ Lenore Albert
                                            Lenore Albert

**FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al         CASE NO. cv12-04123*