Lenore L. Albert, Esq.   SBN 210876
LAW OFFICES OF LENORE ALBERT
7755 Center Avenue, Suite #1100
Huntington Beach, CA 92647
Telephone (714) 372-2264
Facsimile (419) 831-3376
Email: lenorealbert@msn.com
Attorney for Plaintiff, LORENSO PASILLAS, and AMELIA PASILLAS,
*on behalf of themselves and all others similarly situated*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

| | |
|---|---|
| LORENSO PASILLAS, et al,<br><br>                    Plaintiffs,<br>vs.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY, et al.,<br>                    Defendants. | CASE NO. 12-cv-04123-LHK (PSG)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Hearing Date: December 12, 2013<br>Time: 1:30PM<br>Courtroom: 8 |

1

## MEMORANDUM OF POINTS & AUTHORITIES

## I.        FACTS

On March 20, 2011 Defendants took legal title to the Pasillas Ranch by way of recording a "corrective deed" with the County Recorder's office.

The Pasillas purchased their dream ranch which is home to three families and approximately 100 animals, including bulls, cows, horses and dogs in 2003.  They bought the farm for $1.1 million dollars. Since they did not have the entire amount to pay cash, they paid $416k in cash and borrowed $600k from New Century Mortgage. (FAC ¶22-23)

The property has two distinct multifloor main houses and stretches for acres. The Pasillas, who are Spanish speaking had Remington Duque tell them in Spanish what the terms of the loan were. They understood that only one of the homes was being collateralized by the loan.  Indeed, the front page of the deed of trust only described one of the homes in it.

The Pasillas entered into the loan and made all of their payments.  However, at the beginning of the foreclosure crisis, New Century Mortgage went in Chapter 11 Bankruptcy in or about 2007-2008.

At that time, Ocwen stopped accurately and promptly applying the Pasillas loan payments to their loan.

As a result, on March 13, 2009 Vicki Steen, employed by LPS Default Title and Closing acting as agent for Defendant Aztec Foreclosure Corporation who in turn was acting as Agent for the Beneficiary under said Deed of Trust, executed a Notice of Default against the Property purporting Plaintiffs owed Defendant Deutsche Bank "$18,162.16 as of March 27, 2009."  The Notice of Default declared that the default was a result of a "nonpayment" that "became due [on] 12/01/08."

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.        CV-12-04123-LHK (PSG)*

This Notice of Default was recorded in San Benito's County Recorder's Office on March 30, 2009 and defendants used this document to fraudulently initiate a foreclosure upon the Plaintiff's Property.

The truth is Defendant Ocwen endorsed, accepted and cashed the following payments from the Plaintiffs on this Property in 2008 as follows:

| Date Posted by Bank showing the Check Cleared the Account | Amount the Plaintiffs Paid on their Loan |
|---|---|
| 12/29/2008 | $ 4,200.00 |
| 12/22/2008 | $ 4,200.00 |
| 11/24/2008 | $ 4,631.37 |
| 12/4/2008 | $ (4,631.37) |
| 12/4/2008 | $ 4,631.37 |
| 10/15/2008 | $ 3,891.59 |
| 9/22/2008 | $ 4,086.17 |
| 8/28/2008 | $ 4,086.17 |
| 9/9/2008 | $ (4,086.17) |
| 9/9/2008 | $ 4,631.37 |
| 7/28/2008 | $ 3,329.00 |
| 7/28/2008 | $ 1,496.95 |
| no endorsement found | $ 3,523.58 |
| 7/18/2008 | $ 3,523.58 |
| 6/13/2008 | $ 4,280.75 |
| 5/19/2008 | $ 4,280.75 |
| 4/24/2008 | $ 3,891.59 |
| 3/17/2008 | $ 3,891.59 |
| 2/18/2008 | $ 3,891.59 |
| 1/16/2008 | $ 3,891.59 |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.        CV-12-04123-LHK (PSG)*

Based on the foregoing, Plaintiffs allege they were not in default as of December 1, 2008 as represented in the Notice of Default recorded on March 30, 2009 in the County Recorder's Office. (FAC ¶29-33)

So they contacted Remington Duque.

The complaint alleges that plaintiffs employed Remington Duque to assist them in obtaining a loan modification. They went to Mr. Duque on the grounds he was the person who brokered the loan. Mr. Duque falsely promised that he was "confident and optimistic" that defendants were going to modify the loan. However, the plaintiffs were being dual tracked and Aztec Foreclosure Corporation foreclosed while Ocwen was still working out a loan modification (¶79-80).

Mr. Duque did not tell the Pasillas that their home was sold until after they inquired about their modification. Ocwen continued to reset the sale date from time to time on the promise that they would not sell the Property while they were still working on the loan modification. Yet, while the defendants were still processing the loan modification application, on or about October 30, 2009 defendant Aztec Foreclosure Corporation placed the Property on the auction block and then transferred it to Deutsche Bank by a credit bid at a foreclosure auction that Mr. and Mrs. Pasillas were never informed would occur.

This is called the double-cross or dual tracking and is now expressly unlawful under the California Homeowners Bill of Rights which passed on January 1, 2013.

Although they foreclosed, collection continued. Because the dispute initially began with questioned amounts, the Pasillas sent Ocwen a QWR. Although Ocwen failed to provide the history as requested, it did provide the Note. The Note was never endorsed from New Century Mortgage.

4

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.*       *CV-12-04123-LHK (PSG)*

Defendants then attempted to obtain an unlawful detainer judgment of the entire property, but the trustee's deed was incorrect. So instead of judicially foreclosing as required under California law, the defendants merely took it upon themselves to declare that they had the unilateral power and authority to file and record a "Corrective Deed" upon the property on March 20, 2011.

During this time a class action against Ocwen for servicing failures was settled and a settlement check of approximately $10.00 (ten dollars) was received by the Pasillas. Mr. and Mrs. Pasillas rejected the settlement and never cashed the check.

Plaintiffs sent defendants a Qualified Written Request ("QWR"). The defendants inadequately and untimely responded in August 2012. The first response did not contain the note. The Note followed later and it was never endorsed from New Century Mortgage, the original maker of the Note.

Without a proper endorsement, this defendant had no standing to take the property by a credit bid and the transfer of title was void.

California law is very clear. "Investors might have become holders had JWA negotiated the notes by indorsing and transferring possession to Investors. (Cal. U. Com. Code, § 3201. But negotiation does not take place, and the transferee does not acquire the rights of a holder, unless the **[\*\*\*27]** instrument is indorsed. (*Id.*, § 3203, subd. (c).) It follows that, since there is no evidence that JWA negotiated the promissory notes by indorsement and delivery, Investors cannot be holders in due course." *Creative Ventures, L.L.C. v. Jim Ward & Assocs.*, 195 Cal. App. 4th 1430, 1448 (2011).

Nevertheless, this defendant has dispossessed the plaintiffs from legal title to the home and clouded title.

Defendant lacked standing because it was not the owner of the Note. The Note was not endorsed so it could not be a foreclosing beneficiary.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.*      *CV-12-04123-LHK (PSG)*

California's strict compliance with CCP §1161a requires the plaintiff to be the purchaser of the property as described in the statute in order to have standing to sue. A purchaser of the property as described in the statute, who starts an unlawful detainer proceeding to evict an occupant in possession, must show that he or she acquired the property at a regularly conducted sale and thereafter "duly perfected" the title [CCP § 1161a; Vella v. Hudgins (1977) 20 C3d 251, 255, 142 CR 414, 572 P2d 28 ]. To this limited extent, as provided by the statute, title may be litigated in the unlawful detainer proceeding [ Cheney v. Trauzettel (1937) 9 C2d 158, 159, 69 P2d 832 ]..

The term "duly" implies that all of those elements necessary to valid sale exist. Kessler v. Bridge (1958, Cal App Dep't Super Ct) 161 Cal App 2d Supp 837, 327 P2d 241, 1958 Cal App LEXIS 1814. Title that is "duly perfected" includes good record title, but is not limited to good record title. Kessler v. Bridge (1958, Cal App Dep't Super Ct) 161 Cal App 2d Supp 837, 327 P2d 241, 1958 Cal App LEXIS 1814. Title is "duly perfected" when all steps have been taken to make it perfect, that is, to convey to purchaser that which he has purchased, valid and good beyond all reasonable doubt. Kessler v. Bridge (1958, Cal App Dep't Super Ct) 161 Cal App 2d Supp 837, 327 P2d 241, 1958 Cal App LEXIS 1814.

There is a strong showing that Defendants obtained title to the Plaintiffs' home through fraud.

"A judgment entered in an action commenced by a party lacking standing is a nullity." Sturdivant v BAC Home Loans Servicing, LC 2011 ALA Civ App LEXIS 361 December 16, 2011. Consequently, the Judgment in this case and ensuing Writ of Possession is a legal nullity which wholly supports this relief Helen Koshak is now seeking.

6

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.*      *CV-12-04123-LHK (PSG)*

In late 2012, the judge in the US Bankruptcy Court handling the Chapter 11 case against New Century Mortgage started to allow borrowers to file claims as a creditor in order to set aside funds for their "lost loans" as they are at risk of the defaults and refusals to modify on the ground no real creditor exists that has the incentive to modify the loans in order to avoid foreclosure. These are 'windfall' loans that were never transferred so the servicer or new creditor that ends up with them obtain a windfall as they never had to pay one cent for them.

The Pasillas sued.

## I.    LAW

First, the Court must accept as true all non-conclusory, factual allegations made in the complaint. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993). Based upon these allegations, the Court must draw all reasonable inferences in favor of the plaintiff. *See Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009). "[n]on-conclusory factual allegations in the complaint must be treated as true, even if the allegations seem incredible." Id. "If that factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." Id. (quoting Iqbal, 129 S.Ct. at 1949). "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Id. "In reviewing the [motion] "we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." *Casey v. U.S. Bank Nat. Assn.,* (2005) 127 Cal. App. 4th 1138.

> "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability." *Id*. In conducting the above analysis, a court must accept all factual allegations as true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Nevertheless, "the

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.        CV-12-04123-LHK (PSG)*

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949. *Chasnik v Bank of America Home Loans Servicing, LP*, No. CV 11-01324 DMG (JCGx) (CD Cal 7/20/11).

"[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds." *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049, 1057 (9th Cir. 2008)." *Balderas v Countrywide Bank, N.A.,* 10-55064 (9th Cir. 2011) at pg. 21516. "A complaint containing allegations that, if proven, present a winning case is not subject to dismissal under 12(b)(6), no matter how unlikely such winning outcome may appear to the district court." *Balderas v Countrywide Bank, N.A.,* 10-55064 (9th Cir. 2011) at pg. 21517.

In the context of TILA, the plaintiff meets the *Iqbal* and *Twombly* tests if the plaintiff alleges the items that were inaccurately disclosed. *Maxwell v Union Fid. Mortgage, Inc.,* 2009 WL 426189 (ED Cal Feb. 19, 2009).

## II.     ARGUMENT

### A. Whether A General Duty of Care is Owed To Plaintiff under Jolley Is a Question of Fact

Plaintiffs alleged that Defendants gave plaintiff the run around when he was trying to modify his loan. Remington Duque, acting as an agent of Ocwen and Deutsche Bank told the Plaintiffs he was "confident and optimistic" that the loan modification was approved. He never told the Plaintiffs that their home was going to sell.

So the defendants, including this defendant, breached their general duty to plaintiff on the grounds plaintiff has not been given a meaningful opportunity to modify his loan in order to save this home from foreclosure.

8

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.        CV-12-04123-LHK (PSG)*

To state a claim for negligence, the claim must allege duty, breach, causation and injury.

Defendants contend that plaintiff's loan servicer does not owe the plaintiffs a general duty of care per *Nymark*, and as such, the claim for negligence must be dismissed. (Mot. 4)

*Nymark* is inapposite. *Nymark* was a lender; not a servicer, or the agent like Remington Duque with an ongoing relationship with the borrower. This dispute has nothing to do with the original lender or an appraisal.

The California Court of Appeal recently reversed the trial court for summarily dismissing a negligence claim premised on *Nymark*, where the facts surrounded illusory promises of a modification. *Jolley v. Chase Home Fin., L.L.C.*, 213 Cal. App. 4th 872 (2013).

Defendants will no doubt argue that *Jolley* does not apply because *Jolley* concerned a construction loan. This is a distinction without a difference. In fact, the *Jolley* negligence argument should apply with even *greater* force to home loans. Homeowners are less able to protect themselves than general contractors. Also, the *Jolley* court relied on the **Homeowners** Bill of Rights ("HBOR") to come to its conclusion on negligence and the HBOR was designed to protect "**homeowners**."

The *Jolley* court looked to the California Supreme Court in *Connor v. Great W. Sav. & Loan Asso.*, 69 Cal. 2d 850 (1968). In both cases, the court was required to consider the *Biakanja* factors to determine whether or not a duty existed.

Servicers are liable for harmful conduct arising from their own self-interest.

Negligence should be determined on a case-by-case basis using the six *Biakanja* factors. [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury,

9

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.*      *CV-12-04123-LHK (PSG)*

[4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

Here, plaintiff alleged those factors in para. 106-110: (1) Defendants conduct was closely connected to the wrongful initiation and conclusion of a nonjudicial foreclosure on Plaintiffs' home. (2) Defendants conduct was closely related to the injury suffered by Mr. and Mrs. Pasillas. (3) Defendants conduct was contrary to the state and national policy of sustaining homeownership, savings and retirement and was contrary to preventing said future harm to the Plaintiffs. (4) As a consequence, Defendants owed Plaintiffs a general duty of care when foreclosing. (5) Obviously seeking a loan modification in order to avoid foreclosure would directly affect the plaintiff, and (6) the defendants failure to postpone the foreclosure sale or inform the Plaintiffs it would not do so while a loan modification application was being processed would foreseeably lead to an injury.

The policy of preventing future harm is stated in HBOR, the OCC Consent Orders, the Nat'l Mortgage Settlement and SPA.

A general duty of care should be found.

In, *Yau v. Deutsche Bank Nat'l Trust Co. Am.*, 2013 WL 23,02438 (9th Cir. May 24 2013), the Ninth Circuit remanded the case to decide whether the district court should have given plaintiffs the opportunity to add a negligence claim in light of *Jolley*, 213 Cal. App. 4th 872, which was decided after the district court's initial ruling granting the bank's motion to dismiss and denying leave to amend. The court discussed the split among California courts of appeal on the rigidity of the "general rule" from *Nymark* that the typical lender-borrower relationship does not give rise to a duty of care. By contrast, *Jolley* held that, due to public policy considerations expressed in the HBOR legislation,

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.*        *CV-12-04123-LHK (PSG)*

there is a triable issue of fact whether certain circumstances may give rise to a reasonable duty of care owed by a lender to a borrower. The court declined to resolve the conflict, but remanded the case for the district court to make that determination in the first instance.

The California appellate court split was based on another recent decision of *Ragland v US Bank*. In that case, the appellate court found Ms. Pamela Ragland could go forward with a claim of IIED which included punitive damages because the conduct was outside all bounds of reason, however, Ms. Ragland's claim for NIED (negligence) failed because she only alleged financial harm in that claim.

Unlike *Ragland*, plaintiff went on to allege "plaintiff has suffered general emotional distress." (Compl. ¶111-112)

## 1. Defendants are Jointly & Severally Liable

Second, Remington Duque alleges that he is not liable and the court should be pointing their fingers to Ocwen and Deutsche Bank. However, they are merely joint tortfeasors. The Supreme Court has held that the doctrine of joint and several liability survived the adoption of comparative negligence: "[W]e hold that after *Li*, a concurrent tortfeasor whose negligence is a proximate cause of an indivisible injury remains liable for the total amount of damages, diminished only 'in proportion to the amount of negligence attributable to the person recovering.' " (*American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 590 [146 Cal.Rptr. 182, 578 P.2d 899], citing *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804, 829 [119 Cal.Rptr. 858, 532 P.2d 1226].)

## 2. The Statute of Limitations Was Tolled

Finally, there is no statute of limitations that has tolled here on the grounds that the tortious activity has not discontinued. There is nothing in the case law in California to suggest that a foreclosure auction stops the negligent act. Here, the defendants continued

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.          CV-12-04123-LHK (PSG)*

to service the loan long after the 'sale' occurred. Furthermore, the emotional distress has not abated. The tort has neither completed nor been abated.

Second, the statute of limitations was tolled. The discovery rule provides that the accrual date of a cause of action is delayed until the plaintiff is aware of his or her injury and its negligent cause. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109 [245 Cal.Rptr. 658, 751 P.2d 923].) The date to be inserted is the applicable limitation period before the filing date. For example, if the limitation period is two years and the filing date is August 31, 2009, the date is August 31, 2007. If the facts suggest that even if the plaintiff had conducted a timely and reasonable investigation, it would not have disclosed the limitation-triggering information, read the second option. (See *Fox v. Ethicon Endo-Surgery* (2005) 35 Cal.4th 797 [27 Cal.Rptr.3d 661, 110 P.3d 914] [fact that plaintiff suspected her injury was caused by surgeon's negligence and timely filed action for medical negligence against health care provider did not preclude "discovery rule" from delaying accrual of limitations period on products liability cause of action against medical staple manufacturer whose role in causing injury was not known and could not have been reasonably known.

Here, Ocwen was sued in a class action in re Ocwen Loan Servicing litigation, of which the Pasillas were potential class members. In 2011 the class settled for less $20.00 per member. The Pasillas opted not to settle and to take their case on themselves.

Second, the corrective trustees deed was not filed or recorded on their property until March 20, 2011. Up to that time, the Pasillas still legally held legal title to their property. This action was filed in August 2012. The prior action that was dismissed without prejudice for failure to prosecute (the Pasillas filed in pro per) was filed in 2011. Negligence has a two year statute of limitations. The Pasillas did not immediately even know their home had sold at foreclosure in 2009. Under any of these facts, the statute of

12

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.      CV-12-04123-LHK (PSG)*

limitations was tolled and the Pasillas were diligent in seeking this relief. The claim is not barred by statute of limitations.

Consequently the claim should not be dismissed.

**B. Courts Uniformly Hold that Requests for the Identity of the Note Holder Is Included within the Definition of Servicing Under 12 USC §2605**

12 USC §2605(e) provides consumers with important rights to help them resolve disputes with servicers. This provision which was added to RESPA by the Servicer Act of 1990 permits consumers to obtain information about the servicing of the mortgage and escrow accounts by providing a written inquiry to the servicer. When the written inquiry questions the servicer's actions on the account, this provision requires the servicer to respond to this specific dispute and take corrective action when appropriate. A borrower inquiry made under this provision is referred to as a Qualified Written Request ("QWR").

The servicer is liable under this statute if they fail to adequately respond to the request. Ocwen was the servicer in this case, and as alleged in para. X of the First Amended Complaint, Remington Duque was the servicer's agent.

This RESPA statute is not simply a disclosure statute but it requires the servicer to take underline affirmative action to correct the servicing error and conduct an investigation before making a response. A borrower inquiry seeking the identity of the mortgage note holder (aka creditor or assignee) is related to the servicing of the loan and may be demanded by a QWR. *Wise v Wells Fargo Bank, NA* 2012 WL 1058887 (CD Cal March 23, 2012) This comports with the new subsection (k) added to 12 USC 2605. *See also, Selby v Bank of America* 2011 WL 902182 (SD Cal March 14, 2011).

As shown above, the Pasillas family held legal title until March 20, 2011 when the defendants recorded a 'corrective deed.' Collection activity continued.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.*      *CV-12-04123-LHK (PSG)*

The Pasillas requested a QWR because they have always disputed the amount owed that led to the initial default.

Here, there was a major servicing error. As particularly alleged in the complaint, the Pasillas made payments in excess of what they would have owed at the time of the default entered by defendants.

Defendants never responded to the QWR by providing an accounting or addressing the payment loan history. Instead, the defendants sent out a copy of the Note.

The Note which was received on or about 2011 was not endorsed. It was still unnegotiated in New Century Mortgage's name. This only led to more questions as to whom the debt was owed and explained why Ocwen and Deutsche Bank had no incentive (or the same incentive as an actual creditor) in modifying the loan in order to avoid default and foreclosure.

The Pasillas sued. Remington Duque was the servicers agent and acting as the agent of Ocwen during this relevant time period, and as such he is jointly liable.

New Century Mortgage is in Chapter 11 in Delaware. There are a series of 'lost loans' wherein New Century never endorsed the Note. These borrowers, like the Pasillas are creditors where, with a claim, that court will reserve funds from the remaining $25,000,000.00 for claims made in Article III courts such as this.The borrower sent in a QWR attempting to determine its creditor, but AHMSI failed to perform its due diligence and accurately figure that out.

Defendants contend that neither Ocwen nor its agent Remington Duque, was under a duty to disclose who the borrower's creditor was in an accurate and timely fashion. That position is unsubstantiated. 12 USC §2605(e)(1)(A) refers to "information related to the servicing of such loan." Courts have found that requesting information of the identity of the mortgage note holder is "information related to the servicing of the loan." See,

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.        CV-12-04123-LHK (PSG)*

1  Morris v Bank of America 2010 WL 761318 (ND Cal Mar 3, 2010); and Selby v Bank of
2  America, 2011 WL 902182 (SD Cal Mar 14, 2011).

3  Finally, defendants contend that no actual damages were alleged and on those
4  grounds the claim must be dismissed.  Defendant lost the opportunity to modify his home
5  after paying tens of thousands of dollars to the servicer then his home was foreclosed on
6  allegedly and then a corrective deed – correcting the legal description was filed on March
7  20, 2011.  To date no accounting in response to the QWR was received. The complaint
8  taken as a whole alleges damages. However, under either scenario, the defendants are
9  strictly liable for their failure to promptly make an accurate disclosure after a reasonable
10 investigation and statutory damages are awarded if there are no actual damages making
11 defendants' argument irrelevant.

12 **C. 11 USC §2605 has a Three (3) Year Limitation Period And the Pasillas**
13 **Timely Filed this Action**

14      Defendants contend that the claim is barred based on statute of limitation.  The
15 statute of limitations is three years after discovery as stated in 12 USC § 2614.  A
16 Borrower's claim that lender failed to respond to borrower's qualified written request by
17 acknowledging it within twenty days and responding within sixty days as required by 12
18 USCS § 2605(e) is subject to three-year statute of limitations under 12 USCS §
19 2614. Gehman v Argent Mortg. Co. LLC (2010, ED Pa) 726 F Supp 2d 533.

20      Here, the complaint alleges that the QWR violations occurred in August 2012, thus
21 the claim is within the statute of limitation period. (See, e.g. FAC ¶116-122)

22      The claim is timely and makes discovery of other claims relating to the discovery
23 of the Note never being endorsed timely, too.

24 **D. Breach of Contract and Fraud (Negligent Misrepresentation) Were**
25 **Adequately Pled And Within the Statute of Limitations**

26
                                      15
27 **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN**
28 **OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST**
   **AMENDED COMPLAINT**
   *PASILLAS v DEUTSCH BANK NAT'L TRUST CO.*      *CV-12-04123-LHK (PSG)*

The complaint alleges that defendant promised plaintiffs' loan was being modified and that Remington Duque represented he was "confident and optimistic" that the loan modification was approved and that the foreclosure sales were being "postponed." (FAC 76-77)

However, defendants breached when they did not modify the loan and foreclosed.

Recently, California Court of Appeal reversed a trial court's dismissal of the claims for breach and fraud finding that a Temporary Payment Plan (TPP) required permanent modification under HAMP requirements when it is alleged that the borrower complied with the TPP. (*West v JPMorgan Chase Bank, N.A.* (2013) 214 CalApp4th 780 was published.)

The court in *West* found that goal oriented statements that were not true were actionable as fraud.

As explained in *West*, "a contract must be interpreted in a way to make it lawful (Civ. Code §1643). To make the Trial Plan Agreement lawful, it must be interpreted to include the provisio imposed by Directive 09-01." *West*

In this case, Ocwen provided Remington Duque with financial these packages instructing the plaintiffs to fill out Making Home Affordable application packages. The plaintiffs filled out the application and sent in the financial information based on these representations. They made the payments required and waited. (FAC ¶78-80)

Plaintiff specifically alleged Duque Remington's representations and his identity in the FAC at paragraphs 85-87.

Consequently, like West, Remington and Ocwen were required to ensure their writings were interpreted in a way to make them lawful and include the provisions under the Making Home Affordable Guidelines. This has nothing to do with if a borrower is in default – a default cannot then open the door for a bank to commit fraud.

16

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.        CV-12-04123-LHK (PSG)*

Furthermore, reliance is not as onerous of a standard as defendant portrays it.

"[J]ustifiable reliance [means] circumstances were such to make it reasonable for [the] plaintiff to accept [the] defendant's statements without an independent inquiry or investigation.' [Citation]  The reasonableness of the plaintiff's reliance is judged by reference to the plaintiff's knowledge and experience.'" *West* at pg. 780

At the time the statements were made, it was reasonable for the Plaintiff to rely upon them on the grounds the words were in writing on the Defendant's own letterhead (or contained in an email from Duque Remington's email address) or made from employees at the phone number allocated to the defendant. Plaintiff could justifiably rely on believing Remington Duque was trying to help him save his home through a reasonable modification and not using the carrot of the various federal programs to extract funds, over and over again for personal financial gain.

Neither the breach of contract nor the negligent misrepresentation should be dismissed.

The email was a writing.  The statute of limitations for writings is four years on breach of contracts and three years from the date of discovery for negligent misrepresentations.  Here, the Pasillas filed their original complaint in 2011 and this case necessarily related back to that filing and as such are within the four year statute of limitation.  The statute was tolled to the extent the promises were made without any intention to perform to the date of foreclosure in 2009.  All claims are timely.

### E. Violation of Bus & Prof Code § 17200 Should Survive and Are Timely

California's unfair competition law prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." (Cal. Bus. & Prof. Code § 17200.) And under this law, a practice can be prohibited as unfair or deceptive even if not *unlawful*, and vice versa. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163 (1999).) For example, a plaintiff's allegations

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.*        *CV-12-04123-LHK (PSG)*

that a defendant used incomplete and misleading illustrations to sell universal life insurance policies may be actionable under the unfair competition law absent any claim that such conduct violated any regulation or statute. (*Wilner v. Sunset Life Ins. Co.,* 78 Cal. App. 4th 952 (2000).)

An *unlawful* business practice can be "anything that can properly be called a business practice and that at the same time is forbidden by law." (*Summit Tech., Inc. v. High-Line Med. Instruments Co.,* 933 F. Supp. 918 (C.D. Cal. 1966)

This prong of the unfair competition law allows a plaintiff to enforce a broad array of state and federal statutes, including consumer-protection statutes (*Walker v. Countrywide Home Loans, Inc.,* 98 Cal. App. 4th 1158 (2002) (Cal. Civ. Code § 2954.4); antidiscrimination statutes (*Reese v. Wal-Mart Stores, Inc.,* 73 Cal. App. 4th 1225 (1999), (Unruh Civil Rights Act, Cal. Civ. Code §§ 51-51.4)); criminal statutes (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,* 17 Cal. 4th 553 (1998), (Cal. Penal Code § 308); and environmental statutes (*Hewlett v. Squaw Valley Ski Corp.*, 54 Cal. App. 4th 499 (1997), (Cal. Pub. Res. Code § 4511).)

"California appellate courts disagree on how to define an 'unfair' act or practice in the context of a [Section 17200] consumer action." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204–05 (9th Cir. 2010); *see also Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007) ("In the absence of further clarification by the California Supreme Court, we endorse the district court's approach to the law as if it still contained a balancing test.").

This court should find that Plaintiff's allegations regarding Defendants' practices satisfied both the "section 5 test" and the alternative test used by California courts.

First, under the three-pronged section 5 test, a plaintiff must allege: (1) a substantial consumer injury; (2) that the injury outweighs any countervailing benefits to

18

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.        CV-12-04123-LHK (PSG)*

consumers or competition; and (3) that the injury could not reasonably have been avoided. *Camacho v. Auto. Club of S. Cal.*, (2006) 142 Cal. App. 4th 1394, 1403.

Here, plaintiff alleged he lost title to his home as a result of defendant's conduct. Losing a home at foreclosure outweighs any countervailing benefits.

Plaintiff could not have reasonably avoided this injury. He alleged that he hired legal help and sent a QWR to obtain the payment history and hired Remington Duque, Ocwen's own agent to modify the loan. There was nothing more he could have done.

Under an alternative test applied by California Courts, an "unfair" business practice occurs when the practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, (1999) 72 Cal. App. 4th 861, 886–87.

The court should find that Plaintiff's allegations sufficiently pleaded that Defendants' business practices were unfair under that standard.

The entire scheme was not only unfair, but a fraudulent business practice as "members of the public are likely to be deceived." *Schnall v Hertz Corp.*, (2000) 78 Cal.App.4th 1144, 1167.

The statute of limitations is four years. The claims are within the four year window.

### F. <u>Leave To Amend Should Be Granted if the Court Must Dismiss</u>

"If the court should grant any of defendants' requests, then plaintiffs request leave to amend. Fed.R.Civ.P. 15(a). This policy is applied with "extraordinary liberality." *See Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003).

### III.  CONCLUSION

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.*        *CV-12-04123-LHK (PSG)*

For the reasons stated herein, plaintiff respectfully requests that the Court deny defendant's motion to dismiss.

Dated: July 10, 2013                    LAW OFFICES OF LENORE ALBERT

/s/ Lenore Albert_____
LENORE L. ALBERT, ESQ.
Attorney for Plaintiffs Lorenso Pasillas, and
Amelia Pasillas

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.        CV-12-04123-LHK (PSG)*

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE:
 I declare that I am over the age of 18 years, and not a party to the within action; that I am employed in Orange County, California; my business address is 7755 Center Avenue Suite #1100,Huntington Beach, CA 92647.
On July 10, 2013, I served a copy of the following document(s) described as:

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

On the interested parties in this action as follows:

Attorneys for Defendants, Deutsche Bank National Trust Company, as Trustee for GSAMP Trust 2003-HE1, Mortgage Pass-Through Certificates, Series 2003-HE1 (erroneously sued as Deutsche Bank National Trust Company); Ocwen Loan Servicing, LLC; Denise A. Marvel; and Leticia N. Arias:
ERIC D. HOUSER (SBN 130079)
STEVE W. PORNBIDA (SBN 248359)
HOUSER & ALLISON, APC
3780 Kilroy Airport Way, Suite 130
Long Beach, California 90806
Tel:  (562) 256-1675; Fax: (949) 679-1112
Email: spornbida@houser-law.com

Mark C. Carlson, Esq., [SBN 166195]
Adam L. Pedersen, Esq., [SBN 261901]
**CARLSON LAW GROUP, INC.**
4900 Hopyard Road, Suite 285
Pleasanton, California 94588
Telephone No.: (925) 463-0181
Facsimile No.:  (925) 463-0322


Attorneys for Defendant, REMINGTON DUQUE

Attorneys for Defendant, Aztec Foreclosure Corporation:
Keefe E. Roberts, Esq.
Jenna M. Warden, Esq.
KEEFE ROBERTS & ASSOC.
6 Venture, Suite 305

1

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.        CV-12-04123-LHK (PSG)*

Irvine, CA  92618
Ph: 949-242-7979
Fx: 949-648-5354

**[x ] BY CM/ECF** – I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth pursuant to FRCP 5(d)(1).

        I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: June 10, 2013

                            s/ Lenore Albert_____
                                 Lenore Albert

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO REMINGTON DUQUE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.*     *CV-12-04123-LHK (PSG)*