Lenore L. Albert, Esq.   SBN 210876
LAW OFFICES OF LENORE ALBERT
7755 Center Avenue, Suite #1100
Huntington Beach, CA 92647
Telephone (714) 372-2264
Facsimile (419) 831-3376
Email: lenorealbert@msn.com
Attorney for Plaintiffs, LORENSO PASILLAS, and AMELIA PASILLAS,

## UNITED STATES DISTRICT COURT
## NORTHER DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORENSO PASILLAS; AMELIA PASILLAS, | CASE NO.  cv12-04123-LHK |
| Plaintiffs, | |
| vs. | **SECOND AMENDED COMPLAINT** |
| DEUTSCHE BANK NATIONAL TRUST COMPANY; OCWEN LOAN SERVICING, LLC; AZTEC FORECLOSURE CORPORATION; ROBBIE "ROBERTA" L. WEAVER; ELAINE MALONE; TIANNA ALVARADO; DENISE A. MARVEL; LETICIA N. ARIAS; REMINGTON DUQUE; and DOES 1 through 25, inclusive, | **[Jury demand for Legal Claims]** |
| Defendants. | |

PLAINTIFF, LORENSO PASILLAS, AND AMELIA PASILLAS, plead as follows:

### I.     VENUE

1.      The Court has subject matter jurisdiction over this action under 28 USC §1331 based on a federal question, the court declining to exercise supplemental jurisdiction over state law claims (Doc No. 85).

2. The Court has personal jurisdiction over the defendants in this action by the fact that the Defendants are conducting business in the state of California.

3. Venue is proper in this Court pursuant to 28 USC § 1392 because the action involves real property located in the Central District of California; and pursuant to 28 USC § 1391(b) because a substantial part of the events or omissions on which the claims are based occurred in this District.

## II. PARTIES

4. At all times mentioned herein, Plaintiff LORENSO PASILLAS, AND AMELIA PASILLAS was the title owner by way of a grant deed to the property duly recorded in the San Benito County Recorder's Office, APN No. 015-050-001-000 more commonly known as 7268 and7278 Lovers Lane, Hollister, California 95023 (hereinafter referred to as "The Premises") which was their principal residence.

5. Defendant, DEUTSCHE BANK NATIONAL TRUST COMPANY, as trustee under pooling and servicing agreement dated as of May 1, 2002 of the GSAMP Trust 2003-HE1 (Deutsche Bank), has its principal place of business in Santa Ana, California and is registered to do business in the State of California and claimed to be the title owner of The Premises, by virtue of a trustee's deed upon sale.

6. Defendant, OCWEN LOAN SERVICING, LLC (Ocwen) has its principal place of business in Florida and regularly conducts business in the State of California.

7. Defendant, Aztec Foreclosure Corporation (Aztec), has its principal place of business n and regularly conducts business in the State of California.

8. Defendant, Robbie "Roberta" L. Weaver is a Notary Public, Commission Number 111096 State of Arizona, Maricopa County, for Perry and Shapiro LLP and notarized a document that was recorded in the county recorder's office in order to initiate or conclude the nonjudicial foreclosure that took place in this case. Defendant Weaver is a robo-signer and signs as Assistant Secretary and Vice President as Attorney-in-Fact for Defendant Ocwen and Defendant Deutsche Bank.

9. Defendant, Elaine Malone is a Notary Public, Commission Number 29268 State of Arizona, Maricopa County, for Perry and Shapiro LLP and notarized a document that was recorded in the county recorder's office in order to initiate or conclude the nonjudicial foreclosure that took place in this case. Defendant Weave is a robo-signer and signs as Assistant Secretary and Vice President as Foreclosure Supervisor for Defendant Aztec, although working at the same law firm in Arizona.

10. Defendant, Tianna Alvarado is a Notary Public, Commission Number 292514 State of Arizona, Maricopa County, for Perry and Shapiro LLP and notarized a document that was recorded in the county recorder's office in order to initiate or conclude the nonjudicial foreclosure that took place in this case. Defendant Alvarado is a robo-signer and her true title and capacity are unknown to Plaintiff.

11. Defendant, Leticia N. Arias is a Notary Public, Commission Number 1212282 State of Florida, purporting to be for New Century Mortgage Corporation (NCMC) and notarized a document that was recorded in the county recorder's office in order to initiate or conclude the nonjudicial foreclosure that took place in this case. Defendant Arias is a robo-signer and signs as Attorney-in-Fact for Defendant Ocwen purporting to be on behalf of NCMC.

12. Defendant, Denise A. Marvel, Manager of Document Control and Contract Management of Ocwen and alleged Attorney-in-Fact for bankruptcy NCMC located at Ocwen in Florida and executed a document that was recorded in the county recorder's office in order to initiate or conclude the nonjudicial foreclosure that took place in this case. Defendant Marvel is a robo-signer in this case.

13. Defendant Remington Duque, is the manager and owner of Sunrise Bay Mortgage, and acts as the agent and representative of Defendant Ocwen, whose office is located at 538 Main Street, Watsonville, California.

14. Plaintiffs do not know the true names and capacities of the defendants DOES 1 through 25, inclusive, and, as such, names said defendants by such fictitious

**SECOND AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al          CASE NO. cv12-04123*

names.  Plaintiffs will amend the complaint to state the true name and capacity of the DOE defendant(s) when such information is ascertained.

15.       Plaintiffs are informed and believe, and allege thereon, that each defendant is responsible in some manner for the occurrences alleged in their complaint, and that plaintiffs' damages were proximately caused by the defendants at all times mentioned in the complaint.

16.       Plaintiff is further informed and believes and alleges thereon that each defendant was the agent, servant, representative, and/or employee of their co-defendants, and in doing the things hereinafter alleged were acting in the scope of their authority as agents, servants, representatives, and/or employees, and with the permission and consent of their co-defendants.

17.       Additionally, plaintiff is informed and believes and alleges thereon that each defendant assisted, aided and abetted, adopted, ratified, approved, or condoned the actions of every other defendant and that each corporate defendant, if any, was acting as the alter ego of the other in the acts alleged herein.

18.       Any applicable statutes of limitations have been tolled by the Defendants continuing, knowing, and active concealment of the facts alleged herein.  Despite exercising reasonable diligence, Plaintiffs could not have discovered, did not discover, and were prevented from discovering, the wrongdoing complained of herein.

### III. FACTUAL ALLEGATIONS

19.       Mr. and Mrs. Pasillas bought a farm (the "premises") in 2003 for approximately $1,000,000.00.

20.       They and their extended family have made this farm their home.

21.       It currently houses about 60 cattle, 10 bulls, 30 horses, and a few dogs.

22.       In 2003, Mr. & Mrs. Pasillas paid $416,000.00 in earnest money toward the purchase of their home and borrowed the remaining $600,000.00 from New Century Mortgage.

**SECOND AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. cv12-04123*

23.     The farm consists of two separate homes with two separate addresses: 7268 Lovers Lane and 7278 Lovers Lane respectively.

24.     These two separate addresses for the two separate homes were known to the defendants when the deed of trust securing the loan was drafted.

25.     The defendants secured the loan for $600,000.00 from New Century Mortgage Corporation by a Note dated November 21, 2002 with a deed of trust only attaching to 7278 Lovers Lane, Hollister, California.

26.     The plaintiffs' monthly mortgage payment was fixed at $3,981.59 for thirty years based on a 6.750% interest rate starting January 1, 2003 with a beginning balance of $597,916.13.

27.     From January 1, 2003 through April 1, 2008, Plaintiffs paid Defendant $3,981.59 each month, and on time for their obligation.

28.     On March 13, 2009 Vicki Steen, employed by LPS Default Title and Closing acting as agent for Defendant Aztec Foreclosure Corporation who in turn was acting as Agent for the Beneficiary under said Deed of Trust, executed a Notice of Default against the Property purporting Plaintiffs owed Defendant Deutsche Bank "$18,162.16 as of March 27, 2009."

29.     The Notice of Default declared that the default was a result of a "nonpayment" that "became due [on] 12/01/08."

30.     This Notice of Default was recorded in San Benito's County Recorder's Office on March 30, 2009 and defendants used this document to fraudulently initiate a foreclosure upon the Plaintiff's Property.

31.     The truth is Defendant Ocwen endorsed, accepted and cashed the following payments from the Plaintiffs on this Property in 2008 as follows:

| Date Posted by Bank showing the Check Cleared the Account | Amount the Plaintiffs Paid on their Loan |
| --- | --- |

**SECOND AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al          CASE NO. cv12-04123*

| | | |
|---|---|---|
| 12/29/2008 | $ | 4,200.00 |
| 12/22/2008 | $ | 4,200.00 |
| 11/24/2008 | $ | 4,631.37 |
| 12/4/2008 | $ | (4,631.37) |
| 12/4/2008 | $ | 4,631.37 |
| 10/15/2008 | $ | 3,891.59 |
| 9/22/2008 | $ | 4,086.17 |
| 8/28/2008 | $ | 4,086.17 |
| 9/9/2008 | $ | (4,086.17) |
| 9/9/2008 | $ | 4,631.37 |
| 7/28/2008 | $ | 3,329.00 |
| 7/28/2008 | $ | 1,496.95 |
| no endorsement found | $ | 3,523.58 |
| 7/18/2008 | $ | 3,523.58 |
| 6/13/2008 | $ | 4,280.75 |
| 5/19/2008 | $ | 4,280.75 |
| 4/24/2008 | $ | 3,891.59 |
| 3/17/2008 | $ | 3,891.59 |
| 2/18/2008 | $ | 3,891.59 |
| 1/16/2008 | $ | 3,891.59 |

32.     Based on the foregoing, Plaintiffs allege they were not in default as of December 1, 2008 as represented in the Notice of Default recorded on March 30, 2009 in the County Recorder's Office.

33.     Plaintiffs are informed and believe and allege thereon that Defendant had no right to initiate a nonjudicial foreclosure through the Power of Sale clause contained in the Deed of Trust on the grounds it was Defendant Ocwen's own shoddy accounting practices that led to the appearance of a default on the Deed of Trust.

34.     In fact, Plaintiffs estimate they had paid approximately $700,000.00 in total toward the purchase of this farm by the time the Notice of Default was recorded.

35.     Defendants breached the express terms of the deed of trust by recording a notice of default prior to an actual default under the Deed of Trust making the sale based on the Notice of Default void.

**SECOND AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al          CASE NO. cv12-04123*

36.    Prior to the trustee's sale, Defendant Deutsche Bank was made a party to the deed of trust by way of an assignment.  On May 1, 2009 Denise A. Marvel, Manager of Document Control and Contract Management for Ocwen Loan Servicing, LLC executed an Assignment of Deed of Trust for New Century Mortgage Corporation as its Attorney-in-Fact representing that on May 30, 2003 Plaintiff's Deed of Trust and Note was assigned to Deutsche Bank from New Century Mortgage Corporation.

37.    The covenants in the Deed of Trust allowing Deutsche Bank to foreclose through a Power of Sale clause implied that defendant would first, in good faith, verify that it or its agent, Ocwen Loan Servicing, LLC accurately accounted for all payments made and accurately and timely made the appropriate adjustments to the Plaintiff's account before recording a Notice of Default and initiating a nonjudicial foreclosure by electing to invoke the Power of Sale clause in the Deed of Trust.

38.    Defendant Deutsche Bank breached the implied covenant of good faith and fair dealing by failing to verify that they accurately accounted for all payments made and accurately and timely made the appropriate adjustments to the Plaintiff's account before recording a Notice of Default and initiating a nonjudicial foreclosure by electing to invoke the Power of Sale clause in the Deed of Trust.

39.    On March 17, 2009 a declaration purporting to comply with Cal Civ Code §2923.5 was signed by Kevin M. Jackson, Manager of "Beneficiary/Authorized Signature" and attached to the Notice of Default that was recorded in San Benito on .

40.    Plaintiffs had never been contacted by Kevin M. Jackson, Manager of "Beneficiary/Authorized Signature" to initiate or explore alternatives to foreclosure at any time prior to the execution and recording of the Notice of Default.

41.    Plaintiffs were not given any contact information, such as a phone number or address so that they could contact Kevin M. Jackson to initiate or explore alternatives to foreclosure or to find out why he signed a declaration under penalty of perjury attesting that he had provided "a prominent link on the homepage of Beneficiary's

**SECOND AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*        *CASE NO. cv12-04123*

Internet Web site (if Beneficiary has a Web site) to the following information: [this space left blank] …Options that may be available…advising them of steps to take as to explore those options: [this space left blank].. a toll-free telephone number for borrowers who wish to discuss option for avoiding foreclosure with Beneficiary; [the space on the first page to insert the phone number was left blank.].

42.     The document never provided the information that it stated it was providing; it was merely left blank.

43.     Defendant used the nonjudicial foreclosure procedure in a manner that it was not originally designed to achieve.

44.     Nevertheless, the document was allowed to be recorded in the County Recorder's office and was used to initiate a nonjudicial foreclosure on the Property.

45.     On or about February 2009, Plaintiffs went back to Remington Duque, the manager and owner of Sunrise Bay Mortgage, that assisted them in financing the first loan seeking loan modification assistance.

46.     Duque was acting as Ocwen's authorized agent.

47.     Plaintiffs filled out a Making Home Affordable loan modification application and submitted all documents required in the initial package.

48.     Plaintiffs passed the NPV test and were NPV positive.

49.     Plaintiffs were informed they qualified and were eligible for a HAMP modification.

50.     On March 11, 2009 Plaintiffs received an email correspondence from Duque advising the Plaintiffs to not make any payments on the loan during the loan modification process.

51.     Plaintiffs did as instructed and refrained from making any payments on their loan.

52.     On July 20, 2009 a Notice of Trustee's Sale was recorded which represented that 7278 Lovers Lane would be sold at auction on August 17, 2009 at 11:30AM.

**SECOND AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. cv12-04123*

53.      Plaintiffs contacted Ocwen upon learning of the sale, through Duque, to inquire if the sale would be postponed due to the fact that they had not received a decision on their loan modification yet.

54.      Defendant Ocwen, through Duque, promised Plaintiffs that it would not foreclose on Mr. and Mrs. Pasillas' home while their broker and Ocwen were working out a loan modification.

55.      The property did not sell on August 17, 2009.

56.      Ocwen represented that as the servicer, it had control over whether the Property would be sold at auction or if the sale would be postponed.

57.      On September 4, 2009 Plaintiffs received another email correspondence from Duque requesting more documentation and informing Plaintiffs that the lender had "postponed the foreclosure" sale.

58.      The September 4, 2009 correspondence also stated that Duque was "confident and optimistic"  that Plaintiffs' loan modification would be approved.

59.      Plaintiff provided the requested documentation as requested.

60.      Ocwen continued to reset the sale date from time to time on the promise that they would not sell the Property while they were still working on the loan modification.

61.      Yet, while the defendants were still processing the loan modification application, on or about October 30, 2009 defendant Aztec Foreclosure Corporation represented that it placed the Property on the auction block and then transferred it to Deutsche Bank by a credit bid at a foreclosure auction that Mr. and Mrs. Pasillas were never informed would occur.

62.      Mr. and Mrs. Pasillas were informed of the foreclosure auction after it had already occurred by Duque and lost the opportunity to avoid it from occurring.

63.      On September 4, 2009 Plaintiffs received email correspondence from Duque informing Plaintiffs that the lender had "postponed the foreclosure" sale.

**SECOND AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. cv12-04123*

64.     The September 4, 2009 correspondence also stated that Duque was "confident and optimistic" that Plaintiffs' loan modification would be approved.

65.     Duque was acting as defendant Ocwen's authorized agent or representative when the statement was made.

66.     Plaintiff's failure to act was reasonable on the grounds they were assured that Duque was "confident and optimistic" that a loan modification would be forthcoming.

67.     The trustee's deed upon sale was actually for a property located in Solano County.

68.     However, it was recorded on the Pasillas' property in error.

69.     Ocwen continued to attempt to collect on the debt and charge the Pasillas for past payments while the trustee's deed was wrongfully recorded on their lot.

70.     Finally, on June 27, 2012, Plaintiffs sent Ocwen a Qualified Written Request.

71.     Not hearing anything from the June 27, 2012 request, the Pasillas re-sent the Qualified Written Request again. (Ex A)

72.     The Pasillas asked for the amount of the debt to be validated, who owned their loan (the creditor/investor), the payment history and a copy of the Note.

73.     Defendant Ocwen responded to the QWR by way of a letter dated August 13, 2012.

74.     The August 13, 2012 letter did not disclose the creditor or investor of the loan.

75.     The August 13, 2012 letter did not disclose the payment history, noting only that it would be sent later.

76.     The letter contradicted the collection activity and the trustee's deed upon sale in that it said the Property was sold at foreclosure on October 30, 2009.

**SECOND AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*          *CASE NO. cv12-04123*

77.     The August 13, 2012 letter did not contain a copy of the note, noting only that it would be sent later.

78.     The Plaintiffs then received a letter from Ocwen dated August 14, 2012 representing that the loan documents were enclosed as a follow up response to the QWR.

79.     Attached to the letter was a three page Note made between Plaintiffs and New Century Mortgage Corporation.

80.     The Note, as it existed on August 14, 2012 in Ocwen's possession or control, after the foreclosure sale, did not contain any endorsements from New Century Mortgage Corporation.

81.     Based upon this Note, the back-dated Assignments recorded in the County Recorder's office, and the terms of the Mortgage Backed Securitized GSAMP Trust 2004-HE1, plaintiff is informed that Defendants were not entitled to foreclose and have slandered Plaintiffs' title to the property as a result.

82.     Plaintiff is informed and believes and alleges thereon that Defendant's representation that the Plaintiff's Loan belonged to the mortgage backed securitized trust captioned the "GSAMP TRUST 2004-HE1" ("MBS trust") was not true.

83.     Under the terms of the MBS trust, loans get transferred and assigned as follows:

84.     New Century Mortgage Corporation, the Lender on the deed of trust must transfer the loan to GS Mortgage Securities Corp., who is listed as the "Depositor" of the MBS trust.

85.     Then GS Mortgage Securities Corp. deposits the loan into the trust by executing an assignment of the deed of trust to Defendant, DBNTC, who is listed as the "Trustee" of the MBS Trust.

86.     Defendant, Ocwen Loan Servicing, LLC f/k/a Ocwen Bank, FSB was the designated servicer on this loan.

11

**SECOND AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al          CASE NO. cv12-04123*

87.     By executing the trustee's deed upon sale by credit bid in the name of Deutsche Bank which was recorded in the County Recorder's office, Defendants Deutsche Bank and Ocwen have represented that all assignments and transfers as required by the Pooling and Servicing Agreement dated May 1, 2003 in this MBS Trust were timely executed and followed.

88.     However, no assignment to the MBS trust was recorded in the County Recorder's office until May 8, 2009 wherein an Assignment of Deed of Trust was recorded in San Benito County Recorder's office purporting New Century Mortgage Corporation had assigned the deed of trust and note obligating the Plaintiffs to Deutsche Bank National Trust Company, as Trustee for the registered holders of GSAMP Trust 2003-HE1, Mortgage Pass Through Certificates, Series 2003-HE1 on "the 30th date of May 2003."

89.     Under California law, a recorded assignment alone, cannot assign the Note.

90.     The Note must be endorsed as required under California Commercial Code dealing with Negotiable instruments.

91.     Here, the Note was not endorsed by New Century Mortgage Corporation before the Property was taken by a purported credit bid on October 30, 2009.

92.     Instead of foreclosing on a Note that was properly endorsed to the foreclosing beneficiary, the defendants foreclosed based on an assignment of deed of trust it recorded in the San Benito County Recorder's Office – on a different property with a different legal description located in Solano County.

93.     Defendant Ocwen purported it was executing the Assignment by Denise A. Marvel, Manager of Document Control and Contract Management, New Century Mortgage Corporation by its Attorney in Fact, Ocwen Loan Servicing, LLC on May 1, 2009.

94.     The instrument was used in the nonjudicial foreclosure of the Property to appoint defendant Aztec Foreclosure Corporation as the substitute trustee; to allow

**SECOND AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*        *CASE NO. cv12-04123*

Ocwen to act under a Power of Attorney that was not yet in existence during the time period that it was required to act on behalf of the original beneficiary; and to allow Deutsche Bank to transfer the property to itself with a no-money credit bid.

95.     The instrument contained fabricated statements in that Ocwen Loan Servicing, LLC did not have a power of attorney on May 30th, 2003 to act as New Century Mortgage Corporation's Attorney-in-Fact on the Grounds the Power of Attorney was not recorded until October 11, 2007.

96.     Plaintiff believes that Defendants, and each them, were instrumental in the failure to immediately reconvey title to Plaintiff through either recording a rescission or Reconveyance of the deed to Deutsche Bank on the Property knowing the Note was never endorsed by New Century Mortgage Corporation, and as such, the deed to Deutsche Bank slandered Plaintiff's interest in the Property.

97.     Defendant Ocwen as Attorney-in-Fact for Deutsche Bank purportedly, but falsely, wrongfully and without privilege, held itself out as the holder of legal title to the Property and caused a sale of Plaintiff's Property, and in that capacity, caused a deed to Deutsche Bank to be recorded against the Plaintiff's Property.

98.     None of the Defendants, whether jointly or severally, are the holder of legal title, trustee, beneficiary or assignee of any beneficiary, of any Deed of Trust, mortgage or other lien recorded against the Plaintiff's Property.

99.     The claims of Defendants are without any right whatsoever, in that any and all such interests and rights are defective and as a matter of law are of no legal significance.

100.     Plaintiffs have been damaged by the slander of title in that Plaintiff's title to the Property was clouded and the marketability, salability and value of the Property was impaired.

101.     As a proximate result of Defendants' slander, Defendants have been able to obtain a writ of execution/possession to the entire farm and have been trying to obtain

13

**SECOND AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al          CASE NO. cv12-04123*

physical possession of the property and oust Plaintiffs and their family members off the farm.

102.　　Due to the slander to the title, Plaintiffs have been unable to obtain other credit due to the cloud that this has put on the Property in order to properly fight this eviction.

103.　　As a further proximate result of the Defendants' conduct, and each of them, Plaintiff was injured in his business and property in a number of ways to the continued loss of use of his equity, including but not limited to, the lost opportunity to obtain a home equity loan in order to improve the property; continued lost opportunity to list the Property as a rental; and the continued lost opportunity to refinance or sell the property.

104.　　For a period of time, and continuing to the present Plaintiff has had to forego normal business activities from time to time to fend off Sheriffs that Defendant Aztec Foreclosure Corporation has ordered to the property to evict them, and have been from time to time required to stay at the property for fear if they left the Property unattended, that Defendants would take possession in their absence which would create even a further legal burden and expense to Plaintiff.

105.　　As a further proximate result of Defendants' slander of title to the Property, Plaintiff has been required to bring this action to clear title to the Property.

106.　　Plaintiff is entitled to recover all of his damages resulting from the slander of title including without limitation his attorneys' fees and costs incurred in bringing this action.

107.　　Defendants' acts are malicious, oppressive, and fraudulent in that Plaintiffs have acted with the intent to harm Plaintiff's interest in the Property and are tantamount to an attempted theft of Plaintiff's interest in the Property.  Plaintiff is therefore entitled to punitive damages.

**First Cause of Action**

**Violation of RESPA**

14

**SECOND AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al*　　　　　*CASE NO. cv12-04123*

108.      Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 107 of this Complaint as though set forth in full herein.

109.      The Plaintiffs sent Defendant Ocwen a "qualified written request" on June 27, 2012 by certified mail, return receipt, as that term is defined under RESPA, 12 U.S.C. § 2605(e)(1)(B), regarding the crediting of payments on her mortgage account.  In the qualified written request, the Plaintiff specified their reasons for belief that the account was not in default and requested that Defendant Ocwen correct the error.  The Plaintiff also requested that Defendant Ocwen provide them with information and documentation supporting its claim that the Plaintiff's account was in default.

110.      Defendant Ocwen, violated RESPA, 12 U.S.C. § 2605(e)(1)(A), by failing to provide a written response acknowledging receipt of the Plaintiff's qualified written request no later than 20 days after receipt of the request. The first response by Ocwen was made in the letter dated August 12, 2013.

111.      Defendant Ocwen, violated RESPA, 12 U.S.C. § 2605(e)(2)(A), by failing to make appropriate corrections to the Plaintiff's account in response to the qualified written request, including the crediting of any late charges or penalties, and failing to transmit written notice of such corrections to the Plaintiff no later than 60 days after receipt of the Plaintiff's qualified written request.

112.      Defendant Ocwen was acting as the agent for DEUTSCHE BANK NATIONAL TRUST COMPANY with regard to complying with 12 USC §2605, making Deutsche jointly and severally liable.

113.      Defendant AZTEC FORECLOSURE CORPORATION; ROBBIE "ROBERTA" L. WEAVER; ELAINE MALONE; TIANNA ALVARADO; DENISE A. MARVEL; LETICIA N. ARIAS; and REMINGTON DUQUE were acting as Ocwen's agents and as specifically alleged above, and they were tasked with providing information on behalf of Ocwen regarding the payment history, legal description and

description of whose home actually went to foreclosure and the assignments to the true noteholder.

114.　　　To date, plaintiffs have disputed the default, purported foreclosure, overcharges and excess fees after default, and Defendants have failed to provide an adequate investigation into the matter although the checks were endorsed by Ocwen that were accepted and received in payment of this loan.

115.　　　Furthermore, defendant Ocwen has offered to modify the loan after the QWR was sent, but has refused to uncloud the title with the trustee's deed still in place.

116.　　　A loan that is truly extinguished cannot be modified.

117.　　　Defendant violated RESPA, 12 U.S.C. § 2605(e)(2)(C) by failing to provide the Plaintiff with the information and documentation requested, or an explanation why the information sought was unavailable, no later than 60 days after receipt of the Plaintiff's qualified written request.

118.　　　Defendants, and each of them, violated RESPA, 12 U.S.C. § 2605(e)(2) by refusing to cease its collection efforts and foreclosure proceedings after receiving the Plaintiff's qualified written request.

119.　　　Upon information and belief, Defendant violated RESPA, 12 U.S.C. 2605(e)(3), by providing information to consumer reporting agencies regarding overdue payments allegedly owed by the Plaintiff that were related to her qualified written request.

120.　　　As a direct and proximate consequence with regard to the actions and/or failure to act as alleged above, Plaintiffs have incurred unnecessary overcharges, credit damage, and were not given a meaningful opportunity to modify their loan 2012 because Ocwen insisted on using approximately $100,000.00 to $200,000.00 in extra charges and fees that Ocwen, and the other co-defendants have accrued on the loan since the first dispute about the exact amount owed arose in 2009.

121.     For example, there are property preservation fees and charges but the Pasillas have continually resided at their home and the Pasillas have solely preserved and maintained the property.

122.     Furthermore, the Pasillas first requested this information in 2009 and thereafter but was ignored by Ocwen for nearly 2 years. That delay by Ocwen also caused unnecessary charges and fees, because Plaintiff is informed and believes and alleges thereon that a true accounting would have revealed an outstanding amount of debt, if any, that the Pasillas could have repaid to cure any default.

123.     Defendant has engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605.

124.     As a result of defendant's violation, plaintiff is entitled to damages, attorney's fees and costs.

**VI. PRAYER FOR RELIEF**

**WHEREFORE, Plaintiffs pray for judgment** against defendants, and each of them, as follows:

**A.** Injunctive and declaratory relief consistent with the allegations in this complaint;

**B.** Set aside the trustee's deed upon sale and restore title and possession of the Property to Plaintiffs that is recorded on the Pasillas property but has a legal description for Solano County property;

**C.** Restitution and disgorgement of profits;

**D.** Actual, Special and General Damages as proven at trial;

**E.** Statutory damages and civil penalties;

**F.** Costs of this action, including the fees and costs of experts;

**G.** Attorneys' fees;

**H.** Exemplary and Punitive Damages; and

17

**SECOND AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al          CASE NO. cv12-04123*

**I.** Such other and further relief as this Court finds necessary and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial as to part that is not equitable in nature.

Dated: October 9, 2013          LAW OFFICES OF LENORE ALBERT

By: s/Lenore L. Albert_____
LENORE L. ALBERT, ESQ.
Attorney for plaintiff, LORENSO PASILLAS,
and AMELIA PASILLAS

**SECOND AMENDED COMPLAINT**

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al          CASE NO. cv12-04123*

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE:
 I declare that I am over the age of 18 years, and not a party to the within action; that I am employed in Orange County, California; my business address is 7755 Center Avenue Suite #1100,Huntington Beach, CA  92647.
On October 9, 2013, I served a copy of the following document(s) described as:

**SECOND AMENDED COMPLAINT**

On the interested parties in this action as follows:
For Defendant Western Progressive, LLC and
Defendant Deutsche Bank National Trust Company:
Eric D. Hauser, Esq.
Steven S. Son, Esq.
HOUSER & ALLISON
3760 Kilroy Airport Way, Suite 260
Long Beach, CA 90806
Telephone: (949) 679-1111
Fax: (949) 679-1112
Email: sson@houser-law.com
 **[x] BY CM/ECF –** I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth pursuant to FRCP 5(d)(1).
[ ] **BY EMAIL –** I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth herein.
[ ] **BY FAX –** I caused such document(s) to be transmitted facsimile from the offices located in Westminster, California this business day to the aforementioned recipients.
        I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: October 9,, 2013

                                        s/ Lenore Albert_____
                                          Lenore Albert

**SECOND AMENDED COMPLAINT**
19

*PASILLAS v DEUTSCHE BANK NATIONAL TRUST COMPANY, et al          CASE NO. cv12-04123*

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

SANTA ANA CA 92705

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $1.50 | 0138 |
| Certified Fee | | $2.95 | 09 |
| Return Receipt Fee (Endorsement Required) | | $2.35 | |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $6.80 | 08/03/2012 |

Postmark Here — FREEDOM CA — AUG 1 2012 — USPS 95019

Sent To _Deutsche Bank National Trust Co_
Street, Apt. No.; or PO Box No. _1761 East Street A new Place_
City, State, ZIP+4 _Santa Ana Ca 92705-4934_

PS Form 3800, August 2006          See Reverse for Instructions

7012 1010 0001 9085 1367

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

_Deutsche Bank National_
_Trust Co_
_1761 East Street Andrew Pl._
_Santa Ana, Ca 92705_

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery
Kevin O'Dea    8/3/12

D. Is delivery address different from item 1? ☑ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number (Transfer from service label)
7012 1010 0001 9085 1367

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

1. Deutsche Bank National Trust Co. 1761 East Street Andrew Place Santa Ana, CA 92705
2. Wright, Finlay & Zak 4665 MacArthur Court Suite, 280 Newport Beach, CA 92660
3. Office of the Comptroller of the Currency Communications Division Washington, DC 20219
4. OCC  Customer Assistance Group, 1301 McKinney Street, Suite 3450 Houston, TX 77010

**Applicable to All Successors and/or Assignee**

**Re:   Dispute, Cease & Desist, and Notice of rescission, Property 7268/7278 Lovers Lane Hollister, CA 95023, ACCOUNT # 0031995236**

**Notice to the agent is notice to the principal and notice to the principal is notice to the agent**

**Date:**     July 27, 2012

**From:**   Lorenso Pasillas and Amelia Pasillas

**Sent by:** U.S. Postal Service Certified mail Return Receipt Requested

#7012 1010 0001 9085 1367

**To Whom It May Concern,**

Please take notice as follows:

1. **Authority:** That this Notice of Dispute of Alleged Debt ("Notice of Dispute") is sent to you pursuant to Title 15, United States Code Annotated ("U.S.C.A") § 1692 et seq, known as the Fair Debt Collection Practices Act ("FDCPA"), the legislative purpose of which is to protect consumers **from abusive, deceptive, and unfair debt collection practices by debt collectors; We have already sent Dispute letter to your client and have not heard any response from you. Your failure to perform as herein requested have shown bad faith and has established the fact that you are using abusive, deceptive, false, and unfair collection tactics against us as a consumer.** Furthermore, since you remained  silent to this request for more than 30  days or were unable to verify the debt as above, the legal concepts of estoppel by acquiescence and tacit admission have come into play whereby the alleged debt was admitted invalid,

1

a nullity, and unenforceable, and thereby repudiated in its entirety ab initio. You, your agents, and the attorneys have admitted it by non- compliance.

2. **Your debt collection letter:** Your debt collection letter referenced above, identifying yourself as debt collectors, wherein you allege that we have a debt obligation to the alleged creditor referenced above which is not a real party in interest as it has already sold in illegal securitization as unregistered and un-regulated security; our mortgage payments are not being credited properly which indicate that you, your client are not following the proper accountings as required by "GAAP" mandated by 12 USC

3. The loan was sold multi-times as unregistered and unregulated security and since the closing the real creditor was not disclosed which is continued violation of TILA. We have repeatedly requested but you, your agents have failed to comply this and are in violation. **Our obligation, from prior to its inception;**

  a. Was destined for a transition to a Mortgage Backed Security. This was never disclosed.
  b. It was never conveyed that the obligation was going to be converted to bond and forever separated from the security (Title) that Plantiff gave as collateral.
  c. It was never disclosed that future assignments and sales would not be recorded in the Loudoun County Lands Record.
  d. It was never disclosed that the lending institution , Ocwen Loan Servicing had been involved in this practice for several years prior to our signing of the note and that all the actors were already in place.
  e. It is quite possible, given the number and frequency of the MBS offerings by Ocwen Loan Servicing, that this loan was a "table funded loan", where the nominal lender, Ocwen Loan Servicing, in this case never even put up any funds and the loan was prefunded by the bond offering.(Money was aggregated first) This "prefunding" being something that is addressed in the Prospectus issued by Ocwen Loan Servicing.

**4.** Based on the fact that the obligation was sold and further sold for cash to investors by the Securities underwriter, before our loan closing, according to SEC filings, and prior to my first scheduled loan payment due;

  a. It is easy to surmise the intent was in-place prior to closing of the obligation.
  b. Given the sequence with which our obligation was transferred, by the various actors involved in the bond offering, it is easy to apply the Step-transaction doctrine to see that this was the intent from the very beginning and should have been disclosed.

I.   Step-transaction doctrine is a principle applicable to Taxation laws. According to this principle effect should be given to the substance, rather than the form, of a transaction, by ignoring for tax purposes steps of an integrated transaction that when taken separately are without substance.

II.  **In short, the tax liability should be determined by viewing the transaction as a whole, disregarding one or more non substantive, intervening transactions taken to achieve the final result.**

III. This doctrine expresses the familiar principle that in applying the income tax laws, the substance rather than the form of the transaction is controlling.

IV.  **The U.S. Supreme Court has expressly sanctioned the step transaction doctrine in many cases,** noting that interrelated yet formally distinct steps in an integrated transaction may not be considered independently of the overall transaction.

V.   Courts generally enunciate three basic tests that define the criteria upon which application of the step transaction doctrine applies–**the interdependence test**, **the end result test**, and **the binding commitment test.**

VI.  The interdependence test requires an inquiry as to whether the steps were so interdependent that the legal relations created by one transaction would have been fruitless without a completion of the series.

VII. **The end result test examines whether it appears that separate transactions were really component parts of a single transaction intended from the outset to be taken for the purpose of reaching the ultimate result.**

VIII. The binding commitment test examines whether there was a binding commitment to undertake the later step in a series of transactions. **[Falconwood Corp. v. United States, 422 F.3d 1339 (Fed. Cir. 2005)]**

5. Because of the IRS rules, regulations and Taxation laws relating to REMIC's it is a necessity on the part of the various actors in the securitization process that **there must be a de-recognition of the assets (obligation) and thus a TRUE sale of the obligation. This is also a requirement of General Acceptable Accounting Practices (GAAP) as well as FASB Statement No.140.** The chain of transfer of title has not been perfected, as required by the Pooling and Servicing Agreement.

3

a. The note was not endorsed as per the Pooling and Servicing Agreement ("PSA"), filed with the Securities and Exchange Commission .

b. As per the sale, there should have been at least seven (08) endorsements, but there was no endorsement in the present case; therefore the chain of transfer of title is broken.

c. Due to the secrecy surrounding MERS' recordations, unless a court specifically ordered the data preservation company to cough up the documents and prove up the entire chain of title to its logical conclusion, the title to the property could be construed as **"fatally defective"** if the note and mortgage weren't properly updated and recorded. The improper use of the "official recordation system" that is tried and true in each county courthouse is the apparent cause of the cloud on the title, because proof of actual ownership interest is unknown. That brings us to the next proposed scenario:

d. The truth would not come out until the party holding title **(us, the homeowner)** to the property brings suit to "quiet" that cloud.

e. **As a remedy for fraud and the bifurcation of note and obligation. A court sitting in equity has jurisdiction to quiet title as a remedy for a fraudulent conveyance.** See *Hawkins v Dillman,* 268 Mich 483, 488; 256 NW 492 (1934). Actions to quiet title are "equitable in nature." MCL 600.2932(5).

f.  A mortgage of land is a conveyance within the meaning of the recording acts. *Stover v Bryant & Detwiler Improvement Corp,* 329 Mich 482, 484; 45 NW2d 364 (1951).

g. The following rules determine the law governing perfection, the effect of perfection or non perfection, and the priority of a security interest in collateral:

- While a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or non perfection, and the priority of a security interest in collateral.

- A mortgage which has been severed from the corresponding Note does not entitle the Mortgage Holder to collect on the indebtedness or to take possession of the real property. See also US Supreme Court Cases & Opinions > Volume 83 > CARPENTER V. LONGAN, 83 U. S. 271 (1872)

h. The essential elements of a valid contract are;
      (1) Parties competent to contract,
      (2) A proper subject matter,
      (3) A legal consideration,
      (4) Mutuality of agreement, and
      (5) Mutuality of obligation. Thomas v Leja, 187 Mich. App. 418, 422; 468 N.W.2d 58 (1991) Mutuality of agreement, commonly referred to as "a meeting of the minds," requires a meeting of the minds on all the material facts in order to form a valid agreement. Kamalnath v Mercy Memorial Hosp Corp 194 Mich App. 543, 548- 549; 487 N.W.2d 499 (1992) Whether there is mutuality of agreement or "a meeting of the minds" is reviewed by an objective standard, viewing the expressed words of each party and their visible acts, rather than their subjective states of mind. Kamalnath, supra at 548.  The time to incorporate desired terms and conditions into the settlement agreement is at the time that it is placed onto the record. Mikonczyk, supra at 350 Specific performance of a contract is an equitable remedy. Rowry v University of Michigan, 441 Mich. 1, 9; 490 N.W.2d 305 (1992)

i. MERS, a wholly owned subsidiary of MERSCORP, is a shell entity, which means MERS never holds these notes (again citing from the reported case of Mortgage Electronic Systems, Inc. v. Nebraska Department of Banking and Finance, 704 N.W. 2d. 884, 786 (2005) supra where MERS explains what it does), and means that Defendant MERS can't legitimately claim it has lost notes or that they were ever in possession of any financial interest. Also, the Defendant MERS can't legitimately file affidavits of lost notes or execute power of sale under the security instrument; and therefore, **numerous courts have held it lacks standing when it can't produce the original note or show that it holds it**. In Mortgage Electronic Registration System, Inc. v. Southwest Homes of Arkansas (Ark. Sup.Ct. slip opinion March 23, 2009), **where the Supreme Court of Arkansas held that MERS, which claimed to be both a nominee and beneficiary, had no interest in the Deed of Trust in question, was not a beneficiary despite language in the Deed of Trust stating it was, did not possess any rights as a lender, did not hold any legal title,**

5

**and was therefore not entitled to be a party to an action where the lender, its principal, was a party.**

j. **This immobilization of the mortgage lien now makes it terribly difficult for the securitization partners to track the holder of his note because deeds of trust are no longer assigned, and therefore, new holders of the notes do not record assignments of the deeds of trust when they purchase mortgages.** This, according to MERS, has saved their members in excess of $2.4 Billion in recording fees. And as such has reduced the income to local County Register of Deeds offices and **cancelled any transparency of their actions** which would be evident had the recordings took place properly in the County Register of Deeds offices.

k. MERS is **claiming only to hold Legal title in the Security Instrument, and not both the indebtedness and legal title.** Legal title secures the indebtedness. **Therefore, one cannot exist without the other**. Dougherty V. Randall, 3 Mich. 587, 587 (1855) Also see: Ginsberg V. Capital City Wrecking Co., Michigan 712, 717, 2N.W.2d 892(1942). ( professor Christopher L. Peterson's writings on MERS and the secondary market as a source for the court to understand what MERS is and how it operates. (R. I/179) Christopher L. Peterson, Associate Professor of Law, University of Florida, testified at a hearing before the U.S. Senate Committee on Banking, Housing, and Urban Affairs Subcommittee on Securities, Insurance, and Investment and stated:

   1) First, under state secured credit laws, when a mortgage is assigned, the assignee must record the assignment with the county recording office, or risk losing priority vis-à-vis other creditors, buyers, or lienors.

   2) In this respect, MERS' role in acting as a mortgagee of record in nominee capacity is simply a tax evasion tool.

   3) In addition to its document custodial role, and its tax evasive role, MERS also frequently attempts to bring home foreclosure proceedings in its own name. This eliminates the need for the trust.

   4) The processes by which the actors were required to operate within the constraints of the PSA, GAAP, FASB , SEC and IRS regulations further substantiates the bifurcation of the Note (obligation) from the security (Deed of Trust)..

5. Since you, your agents and your partners have failed to disclose, what was required at closing, I have extended right to rescind our transaction as the transaction is not complete yet.

6. As for the "Negotiable Instrument", the Articles only allow for a written paper instrument. When promissory notes are converted from paper to electronic, the paper promissory note was destroyed. An intentional voluntary act such as destruction is discharge of the debt obligation, UCC Article 3, 3-604.

7. If, the actors had followed their PSA it could be logically surmised that it was assigned to Wells Fargo Bank National association. However, since there is a failure by the defendants to follow their own PSA, there have been no filings in the Loudoun County Lands Records to show this. Therefore it is impossible to ascertain who may claim an interest in the title. As such they have not acted in "good faith' and are in violation of provisions of UCC §1-203.

8. **Purpose of this notice:** That the purpose of this Notice of Dispute is to assert our rights in debt collection under FDCPA § 1692(g) (b) without delay and within thirty (30) days of my receipt of your aforesaid debt collection letter;

9. **Alleged debt disputed:** That I hereby dispute the validity of the alleged debt in its entirety; I also dispute the standing of your client, because it is not a real party in interest as it has sold whatever it had sometime in the past.

10. **Verified documentary evidence requested:** That we hereby request you provide us with the following verified **(sworn to by affidavit)** documentary evidence in substantiation of the alleged debt claimed by the alleged creditor referenced in your debt collection letter.

   (a) **Proof of authority:** Please provide me with verified **(sworn to by affidavit)** proof of your authority to represent the alleged creditor in this instant matter;

   (b) **Real party in interest:** Please verify who the real party in interest is in this debt collection matter; as the record indicates, your client is not the owner of our loan. The toxic assets were purchased by the Maiden Lane LLC under the supervision which indicates the Federal Reserve and US Treasury are the lender, and the Lands record also tells a different story.

   (c) **Alleged original creditor.** Please provide us with the name and address of the alleged original creditor if different from the alleged creditor identified in your above mentioned debt collection letter.

   (d) **Alleged original agreement:** Please provide us with a verified **(sworn to by affidavit)** copy, both front and back, of the alleged original agreement and any other alleged original instruments in their entirety.

Said **affidavit is to be sworn to be true**, **correct, complete, and not misleading, by a properly identified and authorized officer of the alleged creditor,** who states that he or she has personal knowledge **(Federal Rules of Evidence ["FRE"] Rule 602)** of the validity of said alleged original document(s).

> (i**) Inspection of document(s).** Please provide us with the date, time, and place convenient to (CITY, STATE), that I can personally inspect the above alleged original agreement and any other alleged original instruments in their entirety relevant to the above alleged debt at the expense of you and your alleged creditor as this was based on fraud and identity theft. These expenses need to be paid to us in advance.

> (ii) **Custodian of document(s).** Please provide us with the name, title, and address of the natural person custodian of the alleged original agreement and of any other alleged original instruments.

> (iii) **Address of physical location of document(s).** Please provide us with the address of the physical location of the alleged original agreement and any other alleged original instruments if different from "(ii)" above.

(e) **Holder in due course.** Please provide us with verified **(sworn to by affidavit)** evidence that the alleged creditor is the party in the instant matter, i.e., holder in due course, and has a perfected interest in the aforesaid alleged agreement and alleged debt;

(f) **Proof of Value Given:** Please provide us with verified **(sworn to by affidavit)** copies, both front and back, of all documents and records with respect to the aforesaid alleged agreement and alleged debt from the beginning, including but not limited to, any and all issued cancelled certified checks, cashiers' checks, money equivalents or similar instruments, identified as or evidencing assets provided by the alleged creditor and/or the alleged original creditor to me and indorsed by us;

(g) **Deposit slip and cancelled check:** Please provide us with a verified **(sworn to by affidavit)** copy of the deposit slip for the deposit of our alleged agreement in its entirety by the alleged creditor associated with the above alleged account/file number, and a verified copy of the cancelled check issued by the alleged creditor as payor in payment for my alleged agreement in its entirety and any other alleged related instruments;

(h) **Affidavit of debt & damages:** Please provide us with an affidavit of debt and damages incurred, sworn to be true, correct, complete, and not

8

misleading, by a properly identified and authorized officer of the alleged creditor, hereinafter "affiant," upon his or her personal knowledge **(FRE Rule 602)** stating:

> (i) That the alleged creditor is, indeed, the party and holder in due course of the aforesaid alleged original agreement in issue and has an enforceable perfected interest therein pursuant to law and in compliance with, or equivalent sections of the Commercial Code of California State

> (ii)That the alleged creditor provided consideration to me, the alleged debtor, from the assets they had on hand before the alleged credit was made, and incurred a financial loss under the full and complete alleged original agreement and alleged debt, and state each and every loss that the alleged creditor has incurred to date under the alleged debt in issue; and

> (iii) That affiant has personal knowledge **(FRE Rule 602)** regarding the facts of the alleged debt and is the original custodian of the books of entry, or directly supervises said original custodian of the records.

**(i)Bookkeeping journal / account ledger entries:** Please provide me with a verified **(sworn to by affidavit)** copy of the complete set of original bookkeeping journal / account ledger entries associated with my alleged agreement and alleged file/account number using Generally Accepted Accounting Principles per 12 U.S.C. § 1831n, showing all debits and credits and identifying the source(s) and amount of the credit funds/assets;

**(j)Note:** The verifying affidavit of journal / account ledger bookkeeping entries is to be completed by the original custodian of the books and records, sworn to be true, correct, complete, and not misleading. Further, said affidavit shall contain positive identification of the custodian, and state that he or she has personal knowledge **(FRE Rule 602)** of said entries.

(k) **Assignment contract:** Please provide us with verified **(sworn to by affidavit)** proof of an assignment contract in its entirety of the alleged original agreement and the alleged debt in issue from an alleged original creditor, as assignor, to the alleged creditor, as assignee.

(l) **Proof of authority:** Please provide us with a verified **(sworn to by affidavit)** copy of the <u>contract your firm has with the alleged original creditor which authorizes your firm to engage in collection activities on their behalf against the above alleged account, and naming you as an authorized collection agent / claims adjuster.</u>

**(m) Certification of authority**: Please provide us with a verified **(sworn to by affidavit)** certificate of authority from the States, authorizing your company to transact business in the state and a photocopy of your State Department of Commerce, mal practice and Insurance certificate.

(n) **Form 1035:** Please provide us with **Department of the Treasury Form 1035** Custodian of Documents attached or associated with our alleged original agreement and /or the name and address of said custodian per above;

(o) **Form 1099-OID:** Please provide our with **Department of the Treasury Form 1099** Original Issue Discount for each year the alleged creditor was holder in possession of the alleged original agreement;

(p) **Vendor sales slips/vouchers:** Please provide us with verified **(sworn to by affidavit)** copies of all original sales slips/vouchers from all alleged vendors covering all alleged transactions in the above referenced file/account from its inception to date.

**Note:** This Notice of Dispute is not a request for confirmation that you have mere photocopies of alleged documents. I am requesting **ONLY ORIGINAL AND VERIFIED DOCUMENTARY EVIDENCE** in validation of the alleged debt pursuant to the FDCPA.

11. **Warning:** That all your communications and omissions will be made a part of an incorporated into any litigation arising from this matter.
12. First the act of closing a loan wherein the lender is not revealed invalidates or destroys the note even though acceptance of the money creates an obligation. The question is to whom that obligation is owed.
13. Second by "securitizing the receivable according to terms far different than the note ever recited, the description contained in the note becomes increasingly remote from a proper description of the obligation, which keeps changing as the receivable, not the note, moves up the securitization chain. Thus the receivable — the actual obligation that the note purported to describe — keeps changing while the note remains the same and the original note never moves physically by delivery, transfer documents (endorsement, assignment etc.)
14. **Thus the point is that the note is destroyed by operation of law.** And the problem the pretender lenders have is that *the note, even if it is transferred and delivered does not describe the receivable (payments from borrower, insurer, counterparties etc.).*
15. **Time is of the essence; reply deadline:** That time is of the essence, therefore, thirty (30) days from the date of your receipt of this Notice of Dispute to perform in compliance with verifying the alleged debt as requested above per FDCPA mandates. We will consider a reasonable extension of time–only for the production of verified documents–should

you need more than the thirty (30) days if you request it in writing to the address above. **Your failure to perform as herein requested will show bad faith and will establish the fact that you are using abusive, deceptive, false, and unfair collection tactics against me as a consumer.** Furthermore, if you remain silent to this request or are unable to verify the debt as above, the legal concepts of estoppel by acquiescence and tacit admission will come into play whereby the alleged debt will be admitted invalid, a nullity, and unenforceable, and thereby repudiated in its entirety ab initio . **In the interim, you are prohibited from any contact with us, the undersigned, except in writing, and only in regards to the matters herein expressed.** All debt collection activity– including litigation– is to cease per FDCPA § 1692g (b) "… the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt…"

16. Please let us know the status of the Deed of Trust and Note in the light of naming "MERS" as the beneficiary on the Deed of Trust, when "MERS" is not a creditor and there is no name of the "MERS" on the Note. We have hired the Forensic auditors on the securitization and we need this information including all of the above requested.

17.  **Mandatory reply to undersigned:** That all of the above demanded verified evidence, sworn to by a competent witness **per FRE Rule 602**, should be sent to me, the undersigned, as indicated at the address above within the above-mentioned thirty (30) days from your receipt of this Notice of Dispute.

18. **Since you and your agents, partners and others unknown to us have failed to answer and provide the documents and information requested in past.**

19. By using our extended rights of rescission we hereby rescind this transaction under all of the available options explained above, because the disclosure was not made at the closing and identity of the creditor/investor was still hidden.

20. Please let us know the status of the Deed of Trust and Note in the light of naming "MERS" as the beneficiary on the Deed of Trust, when "MERS" is not a creditor and there is no name of the "MERS" on the Note. We have hired the Forensic auditors on the securitization and we need this information including all of the above requested. MERS something a phantom entity, acting in and looking after the interests of straw entities, now are trying to come and clean up the mess made by the fraudulent Deed of Trust and Note in a conspiracy with the factious and straw entities, not because they are any real beneficiaries and have or will experience any loss, but rather to gain substantial fees from the Trust.

21. The formation of the Maiden Lane LLCs in 2008 occurred during a time of severe economic distress in the United States. The sharp deterioration in the U.S. housing market in 2007, led to a loss of confidence in the value of mortgage-related products and in the financial institutions with exposures to these products. The ensuing funding pressures on a range of

11

financial institutions and strained liquidity conditions across the financial system led the Federal Reserve to take a series of unprecedented policy actions to contain the broader risks the financial crisis posed to the economy. Among these actions, the Federal Reserve Board authorized the Federal Reserve Bank of New York (New York Fed) to form three limited liability companies under **Section 13(3) of the Federal Reserve Act** to facilitate lending in support of specific institutions.

22. Maiden Lane I LLC: **Purpose:** ML LLC was created to facilitate the merger of JP Morgan Chase & Co. (JPMC) and Bear Stearns Companies, Inc. (Bear Stearns) by purchasing approximately $30 billion in assets from the mortgage desk at Bear Stearns. The New York Fed lent ML LLC approximately $28.82 billion.

23. **Maiden Lane II, LLC: Purpose:** ML II LLC was created to alleviate capital and liquidity pressures on American International Group Inc. (AIG) stemming from its securities lending program by purchasing $20.5 billion in residential mortgage-backed securities (RMBS) from several of AIG's U.S. insurance subsidiaries. The New York Fed lent ML II LLC approximately $19.5 billion.

24. **Maiden Lane III, LLC: Purpose:** ML III LLC was created to alleviate capital and liquidity pressures on American International Group Inc. (AIG) stemming from credit default swap contracts by purchasing $29.3 billion in multi-sector collateralized debt obligations from certain counterparties of AIG Financial Products Corp. (AIGFP), enabling AIGFP to terminate the associated CDS. The New York Fed lent ML III LLC approximately $24.3 billion.

25. The U.S. Treasury is reported to own $4.6 TRILLION in mortgage bonds, which would make it the creditor in millions of homes that;

> (a) Have already been "foreclosed"
>
> (b) Are in "foreclosure" or
>
> (c) Going to be foreclosed. **Yet not once in any court action is the U.S. Treasury named as the creditor or having any interest in any mortgage.** They paid 100 cents on the dollar to save the big powers, US Bank, JPMorgan Chase Bank NA/ Bank of New York Mellon, HSBC Bank USA, National Association and Deutsche Bank et al and many more on Wall Street **(ignoring the smaller players who had played fair and square)** and now they are going to test the market by starting to sell these mortgage bonds back into the marketplace.

31. Why the government's programs have been so anemic in confronting the fraudulent, illicit and immoral behavior of, US Bank, JPMorgan Chase Bank NA/ Bank of New York Mellon, US Bank, JPMorgan Chase Bank NA/

Bank of New York Mellon, HSBC Bank USA, National Association and Deutsche Bank et al and many more on Wall Street **(ignoring the smaller players who had played fair and square)** and now they are going to test the market by starting to sell these mortgage bonds back into the marketplace and Deutsche Bank et al and many more on Wall Street and **the pretender lenders out there foreclosing on homes they never financed,** you don't have to look any further than the $4.6 TRILLION that the government says it is holding in mortgage-backed bonds that are backed by fatally defective and fraudulent mortgages and notes.

32.    If the government were to tell the truth the way should be done, then the government would have to admit that;

      (a) Under the best case scenario they spent 100 cents when the speculative value was only 2-3 cents and

      (b) There is something fundamentally wrong with the mortgage backed bonds and the underlying fatally defective, fraudulent mortgages and notes. THAT WOULD AMOUNT TO ADMISSION THAT THE TAXPAYERS GIFTED $4.6 TRILLION TO WALL STREET.

33.    To put this into perspective: Seven (7) million homes have been fraudulently sold at auction on credit bids submitted by non-creditors. Not one penny was paid at these auctions or any money before that because the bidder never lent any money nor did they purchase the receivable. **The bidder was paid as a stand-in for the undisclosed and potentially unknowable creditor just like the "loan originator" was paid to stand in as the lender.**

34.    Applying the $4.6 TRILLION from the U.S. Treasury to cover losses to investors and homeowners caused by fraudulent appraisals, fraudulent ratings, and deceptive lending practices, (instead of giving the money to, US Bank,  JPMorgan Chase Bank NA/ Bank of New York Mellon and Deutsche Bank et al and many more on  Wall Street) **would have allowed an average of $657,142 to be applied on each so-called mortgage transaction** providing more than enough to provide substantial relief to investors, and correcting the bogus loans to fair market value levels, thus leaving the investors where they intended to be and the homeowners where they intended to be. Oops!

35.    U.S. Treasury maintains the illusion of authenticity of the mortgage bonds and the mortgages, obscures the identity of creditors in foreclosures, and continues to indirectly prop up balance sheets of mega institutions on Wall Street. The true value of the group is not as reported but more like a negative figure. Let it fall, and do what is right for investors and homeowners and the economy is largely fixed. Continue with current policy

13

and our credibility in world markets will continue to erode. I'm not the only one who figured this out. Central Bankers and world economists understand this perfectly well.

36.    The first ever GAO (Government Accountability Office) audit of the Federal Reserve was carried out in the past few months. **What was revealed in the audit was startling, $16,000,000,000,000.00 (TRILLION) had been secretly given out to US Banks, Corporations and Foreign Banks.** From the period between December 2007 and June 2010, the Federal Reserve had secretly bailed out many of the world's banks, corporations, and governments.

37.    Why the Federal Reserve had never been public about this or even informed the United States Congress about the $16 trillion dollar bailout is obvious the American public would have been outraged to find out that the Federal Reserve bailed out foreign banks while Americans were struggling to find jobs.

38.    The list of institutions that received the most money from the Federal Reserve can be found on page 131 of the GAO Audit and are as follows;

      a. Citigroup: **$2.5 trillion** ($2,500,000,000,000)
      b. Morgan Stanley: **$2.04 trillion** ($2,040,000,000,000)
      c. Merrill Lynch: **$1.949 trillion** ($1,949,000,000,000)
      d. Bank of America **$1.344trillion** ($1,344,000,000,000)
      e. Barclays PLC(United Kingdom) **$868billion**   ($868,000,000,000)
      f. Bear Sterns: **$853 billion** ($853,000,000,000)
      g. Goldman Sachs: **$814 billion** ($814,000,000,000)
      h. Royal Bank of Scotland (UK): **$541 billion**   ($541,000,000,000)
      i. JP Morgan Chase: **$391 billion** ($391,000,000,000)
      j. Deutsche Bank (Germany): **$354 billion** ($354,000,000,000)
      k. UBS (Switzerland): **$287 billion** ($287,000,000,000)
      l. Credit Suisse (Switzerland): **$262 billion**   ($262,000,000,000)
      m. Lehman Brothers: **$183 billion**   ($183,000,000,000)
      n. Wells Fargo: **$5, 108, 351, 172**
      o. Bank of Scotland (United Kingdom): **$181 billion** ($181,000,000,000)
      p. BNP Paribas (France): **$175 billion**   ($175,000,000,000)

39.    Please do not send any reply correspondence to me at any other mail location except as below:-

**Send to:** Lorenso Pasillas and Amelia Pasillas 7278 Lovers Lane Hollister, CA 95023

Signed with reservation of all rights,

Mr. and Mrs. Lorenso Pasillas _____

Dated _____

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _COCu_

☐ Agent
☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery

Kevin O'Dea   8/3/12

1. Article Addressed to:

Deutsche Bank
National Trust Co
1761 East Street
Andrew Place
Santa Ana, Ca 92705-
4934

D. Is delivery address different from Item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7012 1010 0001 9085 1343

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

---

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ $1.50 |
| Certified Fee | $2.95 |
| Return Receipt Fee (Endorsement Required) | $2.35 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $6.80 |

FREEDOM CA
AUG
Postmark
Here
2012
USPS 95019

08/01/2012

7012 1010 0001 9085 1343

Sent to
Deutsche Bank National Trust
Street, Apt. No.; or PO Box No.
1761 East Street Andrew Place
City, State, ZIP+4
Santa Ana, Calif 92705-4934

PS Form 3800, August 2006     See Reverse for Instructions

From          Lorenso Pasillas and Amelia Pasillas 7278 Lovers Lane
Hollister, CA 95023


To          Deutsche Bank National Trust Co. 1761 East Street Andrew
Place Santa Ana, CA 92705-4934

# Re: **<u>Loan # 0031995236 7268/7278 Lovers Lane Hollister, CA 95023</u>**

Certified Return Receipt Mail #7012 1010 0001 9085 1343, Date: July 27, 2012

## **<u>QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT AND VALIDATION OF DEBT LETTER, TILA REQUEST</u>**

**This letter is a "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e).**

Reference: Account #**0031995236** (hereinafter the subject loan fraudulently created and does not have any relation our Deed of Trust and Promissory Note signed by us. This loan number is not registered with the County Lands Record and the loan number on the Deed of Trust and Note at the time of closing, is the reference for all questions and requests described below).

Dear Sir or Madam,

We are writing to you to complain about the accounting and servicing of this mortgage and our need for understanding and clarification of various sale, transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date.

To date, the documents and information we have, that you have sent me, and the conversations with your service representatives have been unproductive and have not answered my questions.

Needless to say, we are very concerned. With all the news lately regarding the stories of predatory lending, you have left us feeling that there is something you are trying to hide. We worry that potential fraudulent and deceptive practices by unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks and practices may have also negatively affected any credit rating, mortgage account and/or the debt or payments that we are currently, or may be legally obligated to.

We hereby demand absolute 1st hand evidence from you of the original uncertificated or certificated security regarding account # **0031995236**. In the event you do not supply us with the very security it will be a positive confirmation on your part that you never really created and owned one.

We also hereby demand that a chain of transfer from you to wherever the security is now be promptly sent to us as well. Absent the actual evidence of the security we have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you say we owe. By debt we are referring to the principal balance you claim we owe; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or sub-service for.

To independently validate this debt, we need to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date. **Upon receipt of this letter, please refrain from reporting any negative credit information (if any) to any credit-reporting agency until you respond to each of the requests**.

We also request that you conduct your own investigation and audit of this account since its inception to validate the debt you currently claim we owe. We would like you to validate the debt so that it is accurate to the penny!

Please do not rely on previous servicing companies or originators records, assurances or indemnity agreements and refuse to conduct a full audit and investigation of this account.

We understand that potential abuses by you or previous servicing companies could have deceptively, wrongfully, unlawfully, and/or illegally:

Increased the amounts of monthly payments;
Increased the principal balance we owe;
Increased the escrow payments;
Increased the amounts applied and attributed toward interest on this account;
Decreased the proper amounts applied and attributed toward the principal on this account; and/or
Assessed, charged and/or collected fees, expenses and miscellaneous charges we are not legally obligated to pay under this mortgage, note and/or deed of trust.

We request you insure that we have not been the victim of such predatory servicing and lending practices.

To insure this, we have authorized a thorough review, examination, accounting and audit of mortgage account #**0031995236** by mortgage auditing and predatory servicing or lending experts. This exam and audit will review this mortgage account file from the date of initial contact, application and the origination of this account to the present date written above.

Again, this is a Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 section 2605(e) of the United States Code as well as a request under the Truth in Lending Act 15 U.S.C. section 1601. RESPA provides substantial penalties and fines for non-compliance or failure to answer my questions provided in this letter within sixty (60) days of its receipt.

In order to conduct the examination and audit of this loan, we need to have full and immediate disclosure including copies of all pertinent information regarding this loan. The documents requested and answers to our questions are needed by our self and others to ensure that this loan:

1- Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection Practices Act, HOEPA and other laws;

2- That the origination and/or any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest;

3- That you disclose the claimed holder in due course of the monetary instrument/deed of trust/asset is holding such note in compliance with

statutes, State and Federal laws and is entitled to the benefits of payments;

4- That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc. were and still are properly disclosed to me, including but not limited to the period commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

5- That each servicers and/or sub-servicers of this mortgage has serviced this mortgage in accordance with statute, laws and the terms of mortgage, monetary instrument/deed of trust, including but not limited to all accounting or bookkeeping entries commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

6- That each servicers and/or sub-servicers of this mortgage has serviced this mortgage in compliance with local, state and federal statutes, laws and regulations commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof, ;

7- That this mortgage account has been credited, debited, adjusted, amortized and charged correctly and disclosed fully commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof ;

8- That interest and principal have been properly calculated and applied to this loan;

9- That any principal balance has been properly calculated, amortized and accounted for;

10-     That no charges, fees or expenses, not obligated by us in any agreement, have been charged, assessed or collected from this account or any other related account arising out of the subject loan transaction.

11-     In order to validate this debt and audit this account, I need copies of pertinent documents to be provided to me. I also need answers, certified, in writing, to various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record

in each computer system, program or database used by you that contains any information on this account or our name.

As such, please send to us, at the address above, copies of the documents requested below as soon as possible. Please also provide copies, front and back, of the following documents regarding account #**0031995236**;

1- Any certificated or uncertificated security used for the funding of this account;

    2- Any and all "Pool Agreement(s)" or "servicing agreements" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any government sponsored entity, hereinafter GSE or other party;

    3- Any and all "Deposit Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

    4- Any and all "Servicing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

    5- Any and all "Custodial Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

    6- Any and all "Master Purchasing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

    7- Any and all "Issuer Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

    8- Any and all "Commitment to Guarantee" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

    9- Any and all "Release of Document" agreement(s) between the nominal lender at the loan closing and any party or parties who could

claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

10-     Any and all "Master Agreement for Servicer's Principal and Interest Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

11-     Any and all "Servicer's Escrow Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

12-     Any and all "Release of Interest" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

13-     Any Trustee agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and trustee(s) regarding this account or pool accounts with any GSE or other party;

Please also send me copies, front and back, of:

1- Any documentation evidencing any trust relationship regarding the Mortgage/Deed of Trust **and** any Note in this matter;

2- Any and all document(s) establishing any Trustee of record for the Mortgage/Deed of Trust **and** any Note;

3- Any and all document(s) establishing the date of any appointment of Trustee Mortgage/Deed of Trust **and** any Note, including any and all assignments or transfers or nominees of any substitute trustees(s);

4- Any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust **and** any Note;

5- Any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust **and** any Note;

6- Any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust **and** any Note;

7- Any documentation evidencing the Mortgage/Deed of Trust is **not** a constructive trust or any other form of trust;

8- All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any

servicers, or sub-servicers of this mortgage account from the inception of this account to the date written above.

9- All descriptions and legends of all Codes used in your mortgage servicing and accounting system so the examiners and auditors and experts retained to audit and review this mortgage account may properly conduct their work.

10- All assignments, transfers, allonge, or other documents evidencing a transfer, sale or assignment of this mortgage, deed of trust, monetary instrument or other document that secures payment by us to this obligation in this account from the inception of this account to the present date including any such assignment on MERS.

11- All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage including any such assignments on MERS.

12- All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from the inception of this account to the present date.

13- The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account.

14- All escrow analyses conducted on this account from the inception of this account until the date of this letter.

15- The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statements including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

16- Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on this account.

17- All letters, statements and documents sent to us by your company.

18- All letters, statements and documents sent to us by agents, attorneys or representatives of your company.

19- All letters, statements and documents sent to us by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate,

parent company, agent, sub-servicers, servicers, attorney or other representative of your company.

20-       All letters, statements and documents contained in this account file or imaged by you, any servicers or sub-servicers of this mortgage from the inception of this account to the present date.

21-       All electronic transfers, assignments and sales of the note/asset, mortgage, deed of trust or other security instrument.

22-       All copies of property inspection reports, appraisals, BPOs and reports done on our property.

23-       All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of this account to the present date.

24-       All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this account from the inception of this account to the present date.

25-       All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date.

26-       All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account to the present date.

27-       All account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the inception of this account to the present date.

28-       Further, in order to conduct the audit and review of this account, and to determine all proper amounts due, we need the following answers to questions concerning the servicing and accounting of this mortgage account from its inception to the present date. Accordingly, please provide me, in writing, the answers to the following questions:

**In regards to Account Accounting and Servicing Systems:**

1- Please identify for me each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date so that experts can decipher the data provided.

2- For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the name and address of the company that designed and sold the system.

3- For each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system so that we, and others can adequately audit this account.

**In regards to Debits and Credits:**

1- In a spreadsheet form or in letter form in a columnar format, please detail for us each and every credit on this account from the date such credit was posted to this account as well as the date any credit was received.

2- In a spreadsheet form or in letter form in a columnar format, please detail for us each and every debit on this account from the date such debit was posted to this account as well as the date any debit was received.

3- For each debit and credit listed, please provide us with the definition for each corresponding transaction code you utilize.

4- For each transaction code, please provide the master transaction code list used by you or previous servicers.

**In regards to Mortgage and Assignments:**

1- Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in the county property records in the county and state in which our property is located from the inception of this account to the present date? Yes or No?

2- If not, why?

3- Is your company the servicer of this mortgage account or the holder in due course and beneficial owner of this mortgage, monetary instrument and/or deed of trust?

4- Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument we executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date? Yes or No?

5- If yes, please detail for us the names of the seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed of trust or security instrument we executed

securing the obligation on this account that was not recorded in the county records where our property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

## In regards to Attorney Fees:

For purposes of the questions below dealing with attorney fees, please consider attorney fees and legal fees to be one in the same.

1- Have attorney fees ever been assessed to this account from the inception of this account to the present date? Yes or No?

2- If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

3- Have attorney fees ever been charged to this account from the inception of this account to the present date? Yes or No? If yes, please detail each separate charge of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

4- Have attorney fees ever been collected from this account from the inception of this account to the present date? Yes or No?

5- If yes, please detail each separate collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

6- Please provide us with the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date.

7- Please identify for us in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment, charge or collection of attorney fees.

8- Please detail and list for me in writing each separate attorney fee assessed from this account and for which each corresponding payment period or month such fee was assessed from the inception of this account to the present date.

9- Please detail and list for us in writing each separate attorney fee collected from this account and for which each corresponding payment period or month such fee was collected from the inception of this account to the present date.

10- Please detail and list for us in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reason for such adjustment.

12-      Please detail and list for us in writing any adjustments in attorney fees collected and on what date such adjustment was made and the reason for such adjustment.

14-      Has interest been charged on any attorney fees assessed or charged to this account? Yes or No?

15-      Is interest allowed to be assessed or charged on attorney fees charged or assessed to this account? Yes or No?

16-      How much total in attorney fees have been assessed to this account from the inception to the present date?

17-      How much total in attorney fees have been collected from this account from the inception to the present date?

18-      How much total in attorney fees have been charged to this account from the inception to the present date?

19-      Please send us copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that have been assessed or collected from this account from the inception to the present date.

**In regards to Suspense/Unapplied Accounts:**

For purposes of this section, please treat the term suspense account and unapplied account as one in the same.

1-  Has there been any suspense or unapplied account transactions on this account from the inception of this account until the present date? Yes or No?

2-  If yes, please explain the reason for each and every suspense transaction that occurred on this account. If no, please skip the questions in this section dealing with suspense and unapplied accounts.

3-  In a spreadsheet or in letter form in a columnar format, please detail for me each and every suspense or unapplied transaction, both debits and credits that has occurred on this account from the inception of this account to the present date.

**In regards to late fees:**

For purposes of my questions below dealing with late fees, please consider the terms late fees and late charges to be one in the same.

1-  Have you reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

2-  Has any previous servicers or sub-servicers of this mortgage reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

3- Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time? Yes or No?

4- Are late fees considered interest? Yes or No?

5- Please detail for us in writing what expenses and damages you incurred for any payment we made that was late.

6- Were any of these expenses or damages charged or assessed to this account in any other way? Yes or No?

7- If yes, please describe what expenses or damages were charged or assessed to this account.

8- Please describe for us in writing what expenses you or others undertook due to any payment we made, which was late.

9- Please describe for us in writing what damages you or others undertook due to any payment we made, which was late.

10- Please identify for us in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement we signed that authorized the assessment or collection of late fees.

11- Please detail and list for us in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to the present date.

12- Please detail and list for us in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to the present date.

13- Please detail and list for us in writing any adjustments in late fees assessed and on what date such adjustment was made and the reason for such adjustment.

14- Has interest been charged on any late fee assessed or charged to this account? Yes or No?

15- Is interest allowed to be assessed or charged on late fees to this account? Yes or No?

16- Have any late charges been assessed to this account? Yes or No?

17- If yes, how much in total late charges have been assessed to this account from the inception of this account to the present date?

18- Please provide us with the exact months or payment dates you or other previous servicers or sub-servicers of this account claim we have been late with a payment from the inception of this account to the present date.

19- Have late charges been collected on this account from the inception of this account to the present date? Yes or No?

20- If yes, how much in total late charges have been collected on this account from the inception of this account to the present date?

**In regards to Property Inspections:**

For the purpose of this section property inspection and inspection fee refer to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection.

1- Have any property inspections been conducted on our property from the inception of this account to the present date? Yes or No?

2- If your answer is no, you can skip the rest of the questions in this section concerning property inspections.

3- If yes, please tell us the date of each property inspection conducted on our property that is the secured interest for this mortgage, deed of trust or note.

4- Please tell us the price charged for each property inspection.

5- Please tell us the date of each property inspection.

6- Please tell us the name and address of each company and person who conducted each property inspection on our property.

7- Please tell us why property inspections were conducted on our property.

8- Please tell us how property inspections are beneficial to us.

9- Please tell us how property inspections are protective of our property.

10- Please explain to us your policy on property inspections.

11- Do you consider the payment of inspection fees as a cost of collection? Yes or No?

12- If yes, why?

13- Do you use property inspections to collect debts? Yes or No?

14- Have you used any portion of the property inspection process on our property to collect a debt or inform us of a debt, payment or obligation we owe? Yes or No?

15- If yes, please answer when and why?

16- Please identify for us in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement we signed that authorized the assessment or collection of property inspection fees.

17- Have you labeled in any record or document sent to us a property inspection as a miscellaneous advance? Yes or No?

18- If yes, why?

19-      Have you labeled in any record or document sent to us a property inspection as a legal fee or attorney fee? Yes or No?

20-If yes, why?

21.Please detail and list for us in writing each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to the present date.

22. Please detail and list for us in writing each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to the present date.

23-Please detail and list for us in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment?

24-Please detail and list for us in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment?

25-Has interest been charged on any inspection fees assessed or charged to this account? Yes or No?

26-      If yes, when and how much was charged?

29-      Is interest allowed to be charged on inspection fees charged or assessed to this account? Yes or No?

30-      How much total in inspection fees has been assessed to this account from the inception of this account to the present date?

31-      How much total in inspection fees has been collected on this account from the inception of this account to the present date?

32-      Please forward to us copies of all property inspections made on our property in this mortgage account file.

33-      Has any fee charged or assessed for property inspections been placed into an escrow account? Yes or No?

**In regards to BPO Fees:**

1- Have any BPOs (Broker Price Opinions) been conducted on our property? Yes or No?

2-  If your answer is no, you can skip the rest of the questions in this section concerning BPOs.

3- If yes, please tell us the date of each BPO conducted on our property that is the secured interest for this mortgage, deed of trust or note.

4- Please tell us the price of each BPO.

5- Please tell us who conducted the BPO.

6- Please tell us why BPOs were conducted on our property.

7- Please tell us how BPOs are beneficial to us.

8- Please tell us how BPOs are protective of our property.

9- Please explain your policy on BPOs.

10- Have any BPO fees been assessed to this account? Yes or No?

11- If yes, how much in total BPO fees have been charged to this account?

12- Please identify for us in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement we signed that authorized the assessment, charge or collection of a BPO fee from us.

13- Please send to us copies of all BPO reports that have been done on our property.

14- Has any fee charged or assessed for a BPO been placed into an escrow account? Yes or No?

**In regards to Force-Placed Insurance:**

1- Have you placed or ordered any force-placed insurance policies on our property?

2- If yes, please tell us the date of each policy ordered or placed on my property that is the secured interest for this mortgage, deed of trust or note.

3- Please tell us the price of each policy.

4- Please tell us the agent for each policy.

5- Please tell us why each policy was placed on our property.

6- Please tell us how the policies are beneficial to us.

7- Please tell us how the policies are protective of our property.

8- Please explain to us your policy on force-placed insurance.

9- Have any force-placed insurance fees been assessed to this account? Yes or No?

10- If yes, how much in total force-placed insurance fees have been assessed to this account?

11- Have any force-placed insurance fees been charged to this account? Yes or No?

12- If yes, how much in total force-placed insurance fees have been charged to this account?

13- Please identify for us in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement we signed that authorized the assessment, charge or collection of force-placed insurance fees from us.

14- Do you have any relationship with the agent or agency that placed any policies on our property? If yes, please describe.

15- Do you have any relationship with the carrier that issued any policies on our property? If yes, please describe.

16- Has the agency or carrier you used to place a forced-placed insurance on our property provided you any service, computer system, discount on policies, commissions, rebates or any form of consideration? If yes, please describe.

17- Do you maintain a blanket insurance policy to protect your properties when customer policies have expired? Yes or No?

18- Please send to us copies of all forced-placed insurance policies that have been ordered on our property from the inception of this account to the present date.

**In regards to Servicing**:

For each of the following questions listed below, please provide us with a detailed explanation in writing that answers each question. In addition, we need the following answers to questions concerning the servicing of this account from its inception to the present date.

1- Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

2- Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

3- Did the originator or previous servicers of this account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or affiliate of your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this account by your company or any affiliate.

4- Please identify for us where the originals of this entire account file are currently located and how they are being stored, kept and protected.

5- Where is the original monetary instrument or mortgage we signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

6- Where is the original deed of trust or mortgage and note we signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

7- Since the inception of this account, has there been any assignment of our monetary instrument/asset to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

8- Since the inception of this account, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

9- Since the inception of this account, has there been any sale or assignment of the servicing rights to this mortgage account to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments or sale.

10- Since the inception of this account, have any sub-servicers serviced any portion of this mortgage account? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced this mortgage account.

11- Has this mortgage account been made a part of any mortgage pool since the inception of this loan? If yes, please identify for us each and every account mortgage pool that this mortgage has been a part of from the inception of this account to the present date.

12- Has each and every assignment of our asset/monetary instrument been recorded in the county land records where the property associated with this mortgage account is located?

13- Has there been any electronic assignment of this mortgage with MERS (Mortgage Electronic Registration System) or any other computer mortgage registry service or computer program? If yes, identify the name and address of each and every individual, entity, party, bank, trust or organization or servicers that have been assigned to mortgage servicing rights to this account as well as the beneficial interest to the payments of principal and interest on this loan.

14- Have there been any investors (as defined by your industry) who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this account to the present date? If yes, identify the name and address of each and every individual, entity, organization and/or trust.

15- Please identify for us the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges, transfers,

indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

16-    Please provide us with copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

17-    How much was paid for this individual mortgage account by you?

18-    If part of a mortgage pool, what was the principal balance used by you to determine payment for this individual mortgage loan?

19-    If part of a mortgage pool, what was the percentage paid by you of the principal balance above used to determine purchase of this individual mortgage loan?

20-    Who did you issue a check or payment to for this mortgage loan?

21-    Please provide us with copies of the front and back of the canceled check.

22-    Did any investor approve of the foreclosure of my property? Yes or No?

23-    Has HUD assigned or transferred foreclosure rights to you as required by 12 USC 3754?

24-    Please identify all persons who approved the foreclosure of our property.

Please provide us with the documents we have requested and a detailed answer to each of our questions within the lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional RESPA Qualified Written Request letter. Copies of this Qualified Written Request, Validation of Debt, TILA and request for accounting and legal records, Dispute of Debt letter are being sent to FTC, HUD, Thrift Supervision, and all relevant state and federal regulators; and other consumer advocates; and our congressman

It is our hope that you answer this RESPA request in accordance with law and the questions, documents and validation of debt to the penny and correct abuses or schemes uncovered and documented.

# Default Provisions under this QUALIFIED WRITTEN REQUEST

Deutsche Bank National Trust Co. or any agents, transfers, or assigns omissions of or agreement by silence of this RESPA REQUEST via certified rebuttal of any and all points herein this RESPA REQUEST, agrees and consents to including but not limited by any violations of law and/or immediate terminate/remove any and all right, title and interest (liens) in Lorenso Pasillas and Amelia Pasillas or any property or collateral connected to in Lorenso Pasillas and Amelia Pasillas or account #**0031995236** and waives any and all immunities or defenses in claims and or violations agreed to in this RESPA REQUEST including but not limited by any and all:

1- in Lorenso Pasillas right, by breach of fiduciary responsibility and fraud and misrepresentation revocation and rescinding any and all power of attorney or appointment Deutsche Bank National Trust Co. may have or may have had in connection with account #**0031995236** and any property and/or real estate connected with account # **0031995236**

2- Lorenso Pasillas and Amelia Pasillas right to have any certificated or uncertificated  security re-registered in Lorenso Pasillas and Amelia Pasillas, and only Lorenso Pasillas and Amelia Pasillas .

3- Lorenso Pasillas and Amelia Pasillas are right of collection via Bank s liability insurance and/or bond.

4- Lorenso Pasillas and Amelia Pasillas entitlement in filing and executing any instruments, as power of attorney for and by Bank, including but not limited by a new certificated security or any security agreement perfected by filing a UCC Financing Statement with the Secretary of State in the State where Bank is located.

5- Lorenso Pasillas and Amelia Pasillas right to damages because of Bank's wrongful registration, breach of intermediary responsibility with regard to Lorenso Pasillas and Amelia Pasillas's asset by Bank issuing to Deutsche Bank National Trust Co. a certified check for the original value of Lorenso Pasillas and Amelia Pasillas 's monetary instrument. Lorenso Pasillas and Amelia Pasillas right to have account #**0031995236** completely set off because Bank 's wrongful registration, breach of intermediary responsibility with regard to Lorenso Pasillas and Amelia Pasillas's monetary instrument/asset by Bank sending confirmation of set off of wrongful liability of Lorenso

Pasillas and Amelia Pasillas and issuing a certified check for the difference between the original value of Lorenso Pasillas and Amelia Pasillas's monetary instrument/asset and what Lorenso Pasillas and Amelia Pasillas mistakenly sent to Bank as a payment for such wrongful liability.

6- Bank or any transfers, agents or assigns offering a rebuttal of this RESPA REQUEST must do so in the manner of this RESPA REQUEST in accordance of and in compliance with current statutes and/or laws by signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury while offering direct testimony with the official capacity as appointed agent for Bank in accordance with Bank's Articles of Incorporation, By Laws duly signed by a current and duly sworn under oath director(s) of such corporation/ Holding Corporation/ National Association. Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within sixty days. When no verified rebuttal of this RESPA REQUEST is made in a timely manner, a "Certificate of Non-Response" serves as Bank's judgment and consent/agreement by means of silence with any and all claims and/or violations herein-stated in the default provisions or any other law.

7- Power of Attorney: When Bank fails by not rebutting to any part of this RESPA REQUEST Bank agrees with the granting unto Lorenso Pasillas and Amelia Pasillas unlimited Power of Attorney and any and all full authorization in signing and endorsing Bank's name upon any instruments in satisfaction of the obligations of this RESPA REQUEST/Agreement or any agreement arising from this agreement. Pre-emption of or to any Bankruptcy proceeding shall not discharge any obligations of this agreement. Consent and agreement with this Power of Attorney by Bank waives any and all claims of Lorenso Pasillas and Amelia Pasillas, and/or defenses and remains in effect until the satisfaction of all obligations by Bank have been satisfied.

8- With all rights reserved.

Sincerely,

_____

Lorenso Pasillas and Amelia Pasillas 7278 Lovers Lane Hollister, CA 95023

**Dated**_____