Lenore L. Albert, Esq.   SBN 210876
LAW OFFICES OF LENORE ALBERT
7755 Center Avenue, Suite #1100
Huntington Beach, CA 92647
Telephone (714) 372-2264
Facsimile (419) 831-3376
Email: lenorealbert@msn.com
Attorney for Plaintiff, LORENSO PASILLAS, and AMELIA PASILLAS,

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

| | |
|---|---|
| LORENSO PASILLAS, et al, <br><br> Plaintiffs, <br><br> vs. <br><br> DEUTSCHE BANK NATIONAL TRUST COMPANY, et al., <br><br> Defendants. | CASE NO. 12-cv-04123-LHK (PSG) <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO OCWEN, DEUTSCHE BANK, REMINGTON DUQUE, DENISE A. MARVEL, LETICIA ARIAS, ROBBIE "ROBERTA" L. WEAVER, ELAINE MALONE, and TIANNA ALVARADO ("Defendants") MOTION TO DISMISS THE SECONDED AMENDED COMPLAINT** <br><br> Hearing Date: March 13, 2014 <br> Time: 1:30PM <br> Courtroom: 8 |

# MEMORANDUM OF POINTS & AUTHORITIES

## I.  FACTS

The facts are familiar to this court. Plaintiffs were overpaying on their loan. Then they hit hard times where their payments became inconsistent but always appeared to catch up on paper. However, Ocwen caused a notice of default to be recorded when there was none. The plaintiffs complained and Ocwen ignored them. Then Remington Duque, Ocwen's agent said he could help and get them a modification. He said he was "optimistic" then later the family learned that their home was purportedly sold at foreclosure. However, the trustee's deed actually noted a home in Solano County was sold. Mr. and Mrs. Pasillas shot off a QWR. It was ignored. There was a standoff. In 2011 Ocwen filed a corrected trustee's deed. However, that is not allowed under California Law. In 2012 another set of QWRs were sent and this time Ocwen responded. A payment history (aka loosely termed an accounting) and other information was provided. The document showed many extra charges occurring up to 2012.

The original Note was only secured by one home on this sprawling ranch. The home was located at 7278 Lovers Lane, Hollister, California.

Yet, Defendants sent the sheriffs to the Pasillas ranch to lock out all persons residing at both 7276 Lovers Lane and 7278 Lovers Lane.

The sheriffs did not have a valid writ or lock out order and eventually left.

## II.  LAW

First, the Court must accept as true all non-conclusory, factual allegations made in the complaint. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993). Based upon these allegations, the Court must draw all reasonable inferences in favor of the plaintiff. *See Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009). "[n]on-conclusory factual allegations in the complaint must be treated as true, even if the allegations seem incredible." *Mohamed*, 579 F.3d at 949 "If that factual content, so

1

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.*     CV-12-04123-LHK (PSG)

taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." *Mohamed*, 579 F.3d at 949 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." *Mohamed*, 579 F.3d at 949 "In reviewing the [motion] "we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context."

"[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds." *St. Clare v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*), 536 F.3d 1049, 1057 (9th Cir. 2008)." *Balderas v Countrywide Bank, N.A.,* 10-55064 (9th Cir. 2011) at pg. 21516. "A complaint containing allegations that, if proven, present a winning case is not subject to dismissal under 12(b)(6), no matter how unlikely such winning outcome may appear to the district court." *Balderas v Countrywide Bank, N.A.,* 10-55064 (9th Cir. 2011) .

In the context of TILA, the plaintiff meets the *Iqbal* and *Twombly* tests if the plaintiff alleges the items that were inaccurately disclosed. *Maxwell v Union Fid. Mortgage, Inc.,* 2009 WL 426,189 (ED Cal Feb. 19 2009).

### III.  LEGAL ARGUMENT

#### A. Defendants Violated 12 U.S.C. § 2605 (2006) and/or 15 USC §1641(g)

The defendants' entire motion to dismiss relies on one basic premise: the bank and its servicer are not under any obligation to truthfully disclose who the creditor or assignee of the loan is or the payment history and escrow accounts or forced placed insurance which shows up to the present date because none of them can be held liable.

This basic premise is flawed on the grounds that the defendants are merely swapping a RESPA violation under 12 U.S.C. § 2605(e) for a TILA 15 U.S.C. § 1641g (2006) violation.

12 U.S.C. § 2605(e) provides consumers with important rights to help them resolve disputes with servicers. This provision which was added to RESPA by the Servicer Act of 1990 permits consumers to obtain information about the servicing of the mortgage and escrow accounts by providing a written inquiry to the servicer. When the written inquiry questions the servicer's actions on the account, this provision requires the servicer to respond to this specific dispute and take corrective action when appropriate. A borrower inquiry made under this provision is referred to as a Qualified Written Request ("QWR").

The servicer is liable under this statute if they fail to adequately respond to the request. The statute is not simply a disclosure statute but it requires the servicer to take <u>affirmative action to correct the servicing error</u> and conduct an investigation before making a response. A borrower inquiry seeking the identity of the mortgage note holder (aka creditor or assignee) is related to the servicing of the loan and may be demanded by a QWR. Wise v Wells Fargo Bank, NA 2012 WL 10,58887 (CD Cal March 23 2012) This comports with the new subsection (k) added to 12 U.S.C. § 2605. *See also, Selby v Bank of America 2011 WL 902,182 (SD Cal March 14 2011)*.

First Defendant challenges the ability of plaintiff to sue Deutsche Bank. However, the statute does not limit lawsuits to servicers only and the courts have not interpreted such a restrictive meaning. (See, <u>Catencamp v Cendant Timeshare Resort Group -- Consumer Finance, Inc. (2006, CA7 Wis) 471 F3d 780.</u> District court erred in refusing to allow borrower to amend his complaint to invoke <u>12 USCS § 2605(a)</u>, part of Real Estate Settlement Procedures Act, against lender because borrower was entitled to litigate his claim that lender failed to comply with § 2605(a) as he alleged that he did not receive notice from lender that note was negotiable.)(See also, <u>Catalan v GMAC Mortg. Corp. (2011, CA7 Ill) 629 F3d 676.</u> Lender was not eligible for safe harbor under <u>12 USCS § 2605(f)(4)</u> because two letters sent by borrower constituted qualified written requests under RESPA since these letters set forth specific information requests, and thus,

3

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.    CV-12-04123-LHK (PSG)*

determination was required as to whether lender had investigated and responded to letters and refrained from reporting borrowers as delinquent to credit reporting bureaus.)

Second, Ocwen is a servicer, so this would not be a basis for shielding Ocwen. Ocwen contends it is shielded merely because the QWR was sent to Deutsche Bank. However, it is clear that Deutsche Bank delivered the QWR to Ocwen on the grounds Ocwen responded, without objection.

The law does not focus on how Ocwen received the QWR, surely attorneys and loan modification agents also send in QWRs and as such they are received by Ocwen indirectly. The law focuses on what Ocwen does or does not do once it receives the request.

To the extent the address is relevant, it is only relevant IF Ocwen had provided the Pasillas with a "designated address" for QWRS. If the borrower fails to send the correspondence to an address properly designated for the receipt of QWRs, the servicer's acknowledgment and response obligations under RESPA are not triggered. See, e.g. Berneike v CitiMortgage, Inc., 708 F.3d 1141, 1140 (10th Cir. 2013) ("Failure to send the QWR to the designated address for receipt and handling of QWRs does not trigger the servicer's duties [*12] under RESPA.") Here, there is no allegation or proof that Ocwen provided the Pasillas with a designated address. Nor is there any proof one way or the other that Deutsche Bank was or was not a designated address. Since, there is no proof there was a designated address other than Deutsche Bank and there is ample proof Ocwen received the QWR and responded to it, the fact that Mr. and Mrs. Pasillas sent the correspondence to Deutsche Bank is irrelevant.

Defendants next contend there were no damages. However, there are both statutory damages (as a court may allow) plus actual damages.

Here plaintiffs alleged that "the Property was clouded and the marketability, salability and value of the Property was impaired." (SAC ¶ 100). Moreover, the

4

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.    CV-12-04123-LHK (PSG)*

plaintiffs alleged "Plaintiffs have incurred unnecessary overcharges, credit damage, and were not given a meaningful opportunity to modify their loan 2012 because Ocwen insisted on using approximately $100,000.00 to $200,000.00 in extra charges and fees that Ocwen, and the other co-defendants have accrued on the loan since the first dispute about the exact amount owed arose in 2009." (SAC ¶ 120)

This was the crux of the issue. Mr. and Mrs. Pasillas had been overpaying on their mortgage for years. Then suddenly when times became hard, and they had to stick to a strict budget, Ocwen started misapplying their payments they were making as they would make a payment, then miss a payment and make another payment to catch up.

So Mr. and Mrs. Pasillas asked for an accounting because the payments they made just did not make sense when looking at the credits Ocwen was making on the loan. It appeared they were being shorted. To compound matters Ocwen then started adding extra charges to the loan instead of dealing with this dispute promptly and Ocwens delay by two years added $100,000.00 to $200,000.00 to the loan.

Moreover, as the court can see on the accounting provided by Ocwen it was still placing forced placed insurance on the loan up to the present time of 2012.

The court is reminded that Remington Duque was negotiating a loan modification in 2009 and he said it was "optimistic." Then Mr. and Mrs. Pasillas were told their home sold at an auction they were not aware of. Then when they actually obtain a copy of the Trustee's Deed Upon Sale, it was not their house that actually sold but a house located in Solano County, California according to the legal description.

There was never any unequivocal admission that the property actually sold. In fact, whether the property ever sold or was even encumbered by the Deed of Trust in total was a major allegation in the original complaint.

There was a major servicing error.

Additionally, plaintiffs suffered emotional distress and could amend their complaint to add this damage as well. Borrower could recover actual damages for

5

emotional distress resulting from lender's violations of 12 USCS § 2605(e)(3). Johnstone v Bank of Am., N.A. (2001, ND Ill) 173 F Supp 2d 809.

Due to the major servicing errors, the plaintiffs have clouded title, damaged credit, added debt, and uncertainty.

These damages are not "pecuniary" as alleged by the defendant. Moreover, the damages are not a result of any settlement discussions as alleged in the motion. Paragraphs 115-116 are a truism not a settlement discussion. It would be a false claim to modify a loan that was extinguished.

### B. The Rooker Feldman Doctrine does not bar this Action.

Next Defendants contend that the Rooker-Feldman doctrine bars this action. "The *Rooker-Feldman* doctrine precludes lower federal court jurisdiction over claims seeking review of state court judgments . . . no matter how erroneous or unconstitutional the state court judgment may be." *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600 (7th Cir. 2008)

Prior to 2005, the doctrine was used expansively.

In *Exxon Mobil Corp. v. Saudi Basic Industries*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005), the U.S. Supreme Court explicitly limited the doctrine. The doctrine is now "confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' *Exxon Mobil*, 544 U.S. at 284. The doctrine will not prevent a losing litigant from presenting an independent claim to a district court. *Exxon Mobil*, 544 U.S. at 293." *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600 (7th Cir. 2008).

Here, the defendants cite a case from 2003 that used an outdated mode of analysis. Second, an unlawful detainer never had the issue of a violation of 12 USC §2605 before it. The UD action was limited to a summary proceeding over possession. It does not even reach the issue of title. The allegations surrounding the attempted lock-out with an

outdated writ, and review of the County Sheriff Department's actions do not bar this action either. *Verizon Md. Inc.* v. *Public Serv. Comm'n of Md.,* 535 U.S. 635, 644, n. 3, 152 L. Ed. 2d 871, 122 S. Ct. 1753 (2002).

The Ninth circuit explained that the *Rooker-Feldman* does not apply when the "Plaintiffs' core factual allegations primarily address general policies and practices of the County Courts, not the disposition of [the Plaintiffs'] particular case." *Burgess v. Carmichael*, 37 Fed. Appx. 288 (9th Cir. 2007).

There is no citation to show that 12 USC §2605 could be litigated in the UD action. That borders on the most frivolous of arguments.

Next, defendants contend that the plaintiffs are judicially estopped by their bankruptcies, characterizing it as "claim splitting."

First, this court has no reason to step into the bankruptcy judge's shoes if there were 14 bankruptcy court actions as to why the judge allowed it. It is pure speculation and attempting to sway a district judge that somehow that would make the Pasillas family 'bad actors' when the banks like Ocwen stole the tax payers dollars after they foolishly spent their own money and then ripped off the government again by abusing SIGTARP funds is nothing less than astounding – should we count the trillion ways?

When a debtor fails to schedule in their bankruptcy petition, courts have struggled with the application of standing and judicial estoppel upon the debtor's subsequent assertion of the unscheduled claim. Most courts that have examined the issue have taken the position that a plaintiff seeking to pursue such a cause of action may seek to reopen the prior bankruptcy case and amend their Schedule to include the claim. Pursuant to 11 U.S.C. 350, the bankruptcy court may, at its discretion, reopen a closed case in order to "administer assets, to accord relief to the debtor, or for some other cause."

However, first there must have been a 'discharge' of the bankruptcy. A dismissal does not benefit the debtor who filed the petition. In that case, there are no creditors who had their debts discharged, there was no true bankruptcy estate and nothing to distribute

7

or abandon. Defendants fail to show that any of the 14 alleged bankruptcies were even discharged. There is nothing to "gain" without it. Moreover, if the defendants prove there is a discharge, then the district court does not dismiss the case, the district court stays the case for the debtor to motion to reopen and to determine if the bankruptcy court wants the case and potential assets or not.

In sum, plaintiffs requested an accounting and identity of their note holder. 12 U.S.C. § 2605(e)(1)(A) refers to "information related to the servicing of such loan." Courts have found that requesting information of the identity of the mortgage note holder is "information related to the servicing of the loan." See, Morris v Bank of America 2010 WL 761,318 (ND Cal Mar 3 2010); and Selby v Bank of America, 2011 WL 902,182 (SD Cal Mar 14 2011).

Defendants contend that no actual damages were alleged and on those grounds the claim must be dismissed. Plaintiff lost the opportunity to modify his home loan after paying thousands and thousands of dollars to the servicer. There was force placed insurance and overcharges. Changes and cloud to title and credit damage. The complaint taken as a whole alleges damages. However, under either scenario, the defendants are strictly liable for their failure to promptly make an accurate disclosure after a reasonable investigation and statutory damages are awarded if there are no actual damages making defendants' argument irrelevant.

### C. **Discovery Is Needed Before the Other Defendants Can Be Dismissed.**

The Plaintiffs have alleged that Robbie "Roberta" L. Weaver is a notary public commissioned in Arizona and in this case is a "robo-signer and signs as Assistant Secretary and Vice President as Attorney-in-Fact for Defendant Ocwen and Defendant Deutsche Bank." (FAC ¶8)

The Plaintiffs have alleged that Elaine Malone is a notary public commissioned in Arizona and in this case is a "robo-signer and signs as Assistant Secretary and Vice

8

President as Foreclosure Supervisor for Defendant Aztec, although working at the same law firm in Arizona." (FAC ¶9)

The Plaintiffs have alleged that Tianna Alvarado is also a notary public commission in Arizona and in this case is a "robo-signer" for "Perry and Shapiro LLP and notarized a document that was recorded in the county recorder's office in order to initiate or conclude the nonjudicial foreclosure that took place in this case." (FAC ¶10).

The Plaintiffs have specifically alleged a claim for equitable relief to set aside the nonjudicial foreclosure sale in that they "were not in default (on payments) as of December 1, 2008 as represented in the Notice of Default recorded on March 30, 2009."

Yet Ocwen used these numbers and figures.

A trustee's deed upon sale was recorded on November 4, 2009 purporting the trustee sold the home back by credit bid on October 30, 2009 to Deutsche Bank National Trust Company, as trustee for the registered holder of the GSAMP 2003-HE1 because the "default occurred as set forth in the Notice of Default." But that deed signed by defendant robo signer went to a home in Solano County and interfered with Pasillas' loan modification.

The TDUS was signed by defendant Elaine Malone on November 2, 2009 and notarized by Tianna Alvarado.

The legal description attached to the TDUS did not match the legal description of the Deed of Trust. Title was clouded.

On March 24, 2011 defendants recorded a "Corrective Deed" changing the legal description to include the portion that was previously omitted in the TDUS.

The "Corrective Deed" was signed on March 11, 2011 by Defendant Robbie Weaver and notarized by Defendant Tianna Alvarado.

The "legal description of the property is hardly a trivial matter when it comes to foreclosure sales." It goes to the "heart of the matter." By failing to have the proper legal

description on the trustee's deed that was recorded in 2009, no title could pass. The sale was void. *Biancalana v. T.D. Serv. Co.*, 56 Cal. 4th 807, 819 (2013)

The property sold at the auction was one located in Solano County whereas the Pasillas property is located and recorded as being located in San Benito County.

The legal description is vastly different in the Deed of Trust than in the Trustee's Deed Upon Sale.

Plaintiffs alleged that the defendants were attempting to take property it did not own.

Plaintiffs alleged they were not in default when the Notice was recorded.

These are all questions that were pending in the QWR that took Ocwen 2 years to respond to.

The Plaintiffs alleged they were promised their home was not going to be foreclosed on and the agent for Ocwen sent an email representing he was "confident" and "optimistic" that Ocwen was modifying the loan.

The "corrective deed" was nothing more than a material alteration of the trustee's deed upon sale, and void. (*La Jolla Group II v. Bruce*, 211 Cal. App. 4th 461 (2012).)

Since, the "corrective deed" was not recorded until two years later, the defendants do not enjoy the presumption of validity of the sale, nor should they.

Because the Trustee's deed upon Sale was void, the Defendant lacked standing ask for possession by way of a summary proceeding. The judgment it received was based on a deed with the legal description of a different property located in Solano County. Thus, they only had standing to pursue possession based on that Solano County property and not the property of the Pasillas in this case. A judgment entered in an action commenced by a party lacking standing is a nullity. *U.S. Bank Nat'l Ass'n v. Ibanez*, 941 N.E.2d 40 (Mass. 2011)) [banks' requests for declaration of clear title properly denied where securitization documents did not establish banks were holders of

the mortgages before foreclosure sale at which they purchased properties];*Bevilacqua v. Rodriguez*, 955 N.E.2d 884 (Mass. 2011) [plaintiff did not hold record title, and therefore lacked standing in title action, because bank from which he purchased property was not assignee of mortgage at time of foreclosure sale where it purportedly acquired title];Sturdivant v. BAC Home Loans Servicing, *LP 2011 Ala.Civ.App. LEXIS 361 (Ala.Civ.App. 2011).)* Appellants do not explain how the cases they rely upon relate to the present case.

Title that is "duly perfected" includes good record title, but is not limited to good record title. *Kessler v. Bridge*, 161 Cal. App. 2d Supp. 837 (1958). Title is "duly perfected" when all steps have been taken to make it perfect, that is, to convey to purchaser *that which he has purchased*, valid and good beyond all reasonable doubt. *Kessler*, 161 Cal. App. 2d Supp. 837

Here, that did not occur. There is no reason to believe these individuals who were instrumental in this attempted hijacking of the title to the Pasillas home were merely "notaries." Indeed such individuals generally wind up having a long history of security violations, list of other licenses, and in some cases, a litany of corporations and offshore accounts. The same is true for Remington Duque that was acting as Ocwen's agent as alleged in the second amended complaint. However, here, discovery was stayed. Upon discovery the nexus may become clear. Until that time, dismissal would be inappropriate. (Lender was not entitled to Fed. R. Civ. P. 12(b)(6) dismissal of borrower's claim for violation of 12 USCS § 2605; although borrower did not allege details of how any RESPA violation caused pecuniary loss, borrower sufficiently alleged actual damages and asserted need for discovery before stating amount of loss caused by violations. Agustin v PNC Fin. Servs. Group (2010, DC Hawaii) 707 F Supp 2d 1080.)

**A. Leave To Amend**

11

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**
*PASILLAS v DEUTSCH BANK NAT'L TRUST CO.*     *CV-12-04123-LHK (PSG)*

Plaintiff requests leave to amend if the court grants this motion. Fed.R.Civ.P. 15(a). This policy is applied with "extraordinary liberality." *See Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny defendant's motion, or if it should grant, then give Plaintiff leave to amend.

Dated: November 4, 2013            LAW OFFICES OF LENORE ALBERT

/s/ Lenore Albert
LENORE L. ALBERT, ESQ.
Attorney for Plaintiffs Lorenso Pasillas, and Amelia Pasillas

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE:
I declare that I am over the age of 18 years, and not a party to the within action; that I am employed in Orange County, California; my business address is 7755 Center Avenue Suite #1100, Huntington Beach, CA 92647.
On November 4, 2013, I served a copy of the following document(s) described as:

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO OCWEN, DEUTSCHE BANK, REMINGTON DUQUE, DENISE A. MARVEL, LETICIA ARIAS, ROBBIE "ROBERTA" L. WEAVER, ELAINE MALONE, and TIANNA ALVARADO ("Defendants") MOTION TO DISMISS THE SECONDED AMENDED COMPLAINT**

On the interested parties in this action as follows:

Attorneys for Defendants, Deutsche Bank National Trust Company, as Trustee for GSAMP Trust 2003-HE1, Mortgage Pass-Through Certificates, Series 2003-HE1 (erroneously sued as Deutsche Bank National Trust Company); Ocwen Loan Servicing, LLC; Denise A. Marvel; and Leticia N. Arias:
ERIC D. HOUSER (SBN 130079)
STEVE W. PORNBIDA (SBN 248359)
HOUSER & ALLISON, APC
3780 Kilroy Airport Way, Suite 130
Long Beach, California 90806
Tel: (562) 256-1675; Fax: (949) 679-1112
Email: spornbida@houser-law.com

Mark C. Carlson, Esq., [SBN 166195]
Adam L. Pedersen, Esq., [SBN 261901]
**CARLSON LAW GROUP, INC.**
4900 Hopyard Road, Suite 285
Pleasanton, California 94588
Telephone No.: (925) 463-0181
Facsimile No.: (925) 463-0322


Attorneys for Defendant, Remington Duque

Attorneys for Defendant, Aztec Foreclosure Corporation:
Keefe E. Roberts, Esq.
Jenna M. Warden, Esq.
KEEFE ROBERTS & ASSOC.
6 Venture, Suite 305

1

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

PASILLAS v DEUTSCH BANK NAT'L TRUST CO.    CV-12-04123-LHK (PSG)

| | |
|---|---|
| 1 | Irvine, CA 92618<br>Ph: 949-242-7979 |
| 2 | Fx: 949-648-5354 |
| 3 | |
| 4 | **[x ] BY CM/ECF** – I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth |
| 5 | pursuant to FRCP 5(d)(1). |
| 6 | I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. |
| 7 | |
| 8 | Dated: November 4, 2013 |
| 9 | s/ Lenore Albert_____<br>Lenore Albert |